## HIRAM THOMPSON and Others *v.* ROLLIN M. CARL.*

### *Deed. Construction. Entailment.*

A deed was in these words: . . . I . . . give, grant, sell, convey, and confirm unto . . . Betsey Thompson *and her legal heirs by Samuel Thompson, Jr., and assigns* forever, a certain piece of land . . . To have and to hold to the said Betsey, *her heirs and assigns,* to them and their own use and behoof forever; and I . . . do covenant with the said Betsey, *her heirs and assigns* . . . *Held,* that it created what, at common law, would have been an estate tail, but what, under Gen. Sts. c. 64, s. 1, was an estate for life in Betsey Thompson, remainder in fee to her designated heirs.

EJECTMENT for land in Starksboro. The case was tried on an agreed statement of the following facts.

On December 12, 1846, Davis B. Rich conveyed the demanded premises to Betsey Thompson, then the wife of Samuel Thompson, by warranty deed of that date as follows:

Know all men . . . that I, Davis Rich . . . for the consideration of the sum of fifty dollars paid to my full satisfaction by Betsey

* Decided at the January Term, 1878.

Thompson . . . do freely give, grant, sell, convey, and confirm unto the said Betsey Thompson and her legal heirs by Samuel Thompson, Jr., and assigns forever, a certain piece of land . . . in Starksboro . . . To have and to hold to the said Betsey, her heirs and assigns, to them and their own use and behoof forever ; and I . . . do covenant with the said Betsey, her heirs and assigns . . .

Said Betsey then took possession under her deed, and remained until June 26, 1860, when she and said Samuel, by their quit-claim deed of that date, released all .their right and title to said premises to the defendant, who thereupon took and ever after retained possession. At some time in 1869 or 1870 said Betsey died, and after her death the plaintiffs, the children and legal heirs of said Betsey by said Samuel, demanded possession, which was refused. It was agreed that if the plaintiffs were entitled to recover, they should recover possession and one cent damages with costs, but that they should recover nothing for rents and profits and the defendant nothing for betterments.

At the June Term, 1877, the court, PIERPOINT, C. J., presiding, rendered judgment, *pro forma*, for the defendant, to which the plaintiffs excepted.

*S. H. Davis*, for the plaintiffs, contended that the grantee took a life estate only, and cited *Flagg* v. *Eames*, 40 Vt. 16, and numerous other cases.

*E. W. J. Hawkins* and *Stewart & Eldridge*, for the defendant.

The grantee took not what under the statute *de donis* would be an estate tail, and under our statute a life estate, but an estate in fee simple. The premises are contradictory. The words, " and assigns forever," are inconsistent with the idea of an estate tail. But the *habendum* may be taken into consideration in ascertaining the intention of the parties. It may qualify, enlarge, or diminish the words of the grant. 4 Greenl. Cruise, 272, note ; *Sumner* v. *Williams*, 8 Mass. 162 ; *Jackson* v. *Iredell*, 3 Wend. 99 ; *Pillsworth* v. *Pyett*, Sir F. Jones, 4 ; *Congregational Society of Halifax* v. *Stark*, 34 Vt. 243 ; *Flagg* v. *Eames*, 40 Vt. 16. The language of the covenants may also be considered. *Miles* v. *Catlin*, 22 Vt. 98. Whatever is obscure in the premises is thus rendered clear.

The opinion of the court was delivered by

Barrett, J.    In the premises of the deed the language is, " grant, sell, convey, and confirm unto the said Betsey Thompson and her legal heirs by Samuel Thompson, Jr., and assigns forever," &c.    In the *habendum*, " to have and to hold to the said Betsey, her heirs and assigns, to them and their own use and behoof forever."—" Covenant with the said Betsey, her heirs and assigns." ' The *habendum* and *covenant*, in the language above quoted, are the same as in an ordinary deed conveying an absolute fee simple.    It is not questioned that if the language in the premises, viz., " unto the said *Betsey Thompson* and her legal heirs by Samuel Thompson, Jr.," is to have operation and effect according to its legal import, an estate tail at common law was created, which, under our statute, would be an estate for life in B. T., remainder in fee to her designated heirs.

But it is claimed that the other language and parts of the deed show it was the intent by the deed to convey to her an absolute estate in fee, and that such should be its operation, notwithstanding the designation of particular heirs of herself in the granting part of the deed.    To this and it is said that the clause, " and assigns," in that part of the deed, creates a doubt as to the intent of the grant, as depending on that part of the deed, and therefore the *habendum* and covenant may be resorted to for light as to such intent.    It is conceded that when the intent is clear from the premises of the deed, the residue of the deed has no function as tending or helping to show it.    The expression, "to B. T. *and* her legal heirs by S. T. Jr.," seems to have been used as a cautious and explicit designation of the persons intended to be entitled under the deed, excluding the idea of a general inheritance, and limiting the grant to the persons designated, to have operation and effect according to law.    The " *and* " following the name of Betsey Thompson as the named grantee, is additional to, and different from, the usual formulary in that part of a deed by which a fee simple, inheritable generally and without restriction, is conveyed, and may be regarded as marking an intent to do something different from what is done by such last named deed.    In such deed the expression would be, " to B. T., her heirs and assigns,"

Thompson et als. *v.* Carl.

and she would become the sole grantee of an absolute fee simple. That expression admits of no question as to intent when unaffected by anything else. But when the first taker is named, as in this case, and then certain others, by way of addition, are specifically designated to take by force of the deed, the intent of creating an unlimited inheritance is negated. What follows, viz., " and assigns," is not repugnant to this view ; for that expression would be capable of full effect by construing it to mean, assigns of the designated heirs ; and it may as well mean that, as the assigns of the named grantee, B. T., thus letting the face of the deed in the premises create title and estate that, at common law, would be an estate-tail, and, under our statute, an estate for life in the first taker, and a fee simple absolute in those taking in remainder. The expressions in the *habendum* and in the covenant, quoted above, which are the common formulary in deeds of fee simple absolute, are not inconsistent with this. For it is easy and congruous to suppose that " her heirs," in the *habendum* and covenant, means the same and was intended to mean the same, as the heirs designated in the premises ; and if so, then the " assigns " meant in the *habendum* and covenant would be the same as those meant in the grant, viz., the assigns of the specified heirs. Or again, assuming that the expression in the premises, " to her and her legal heirs by S. T.," would create a life estate in her, remainder in fee in the designated heirs, then, " and assigns " might properly be regarded as meaning such as should become assigns of either herself or of her specified heirs, or both, of such estate and interest as each should respectively have by force of the deed. In this view there is no repugnancy or inconsistency in the premises on the score of the expression, " and assigns," in it, as indicating the grant of an absolute fee simple, as against the special designation of the heirs, as indicating a grant in fee tail.

It is agreed that the *habendum* and covenant do not control the premises unless, all taken together, they show that something different was intended from what would result from the premises taken by itself. It is also agreed that all the parts and words of the deed should have effect, if may be. It is not the office of the *habendum* to render nugatory any of the words of the

grant so that they shall have no effect, and so that the grant shall have an effect entirely different from that imported by its terms. To construe the *habendum* and covenant so as to give them the operation and effect claimed, would be to lay out of the deed the expression, " and her legal heirs by Samuel Thompson, Jr.," and substitute the words, " her heirs," and this would give to the premises the same effect as if the grant had been expressed, " to B. T., her heirs and assigns," thus transforming a life estate in B. T., remainder to the heirs designated, into a fee simple absolute in B. T., inheritable by her heirs generally. This certainly would be giving an important function to those latter parts of the deed not hitherto accorded to them. On the other hand, the proper effect, according to its terms, of the grant " to B. T. and her legal heirs by S. T. Jr.," would not expunge from the deed any words of the *habendum* or covenant, nor render them nugatory, but would leave them to have force upon the estate created and conveyed by the premises. See *Corbin* v. *Healey*, 20 Pick. 514, which is directly in point as to the construction and legal operation of the deed. It is much easier to suppose that in using the word *heirs* in the *habendum* and covenant, such heirs were meant as had been designated in the premises, than that by that special designation in the premises *all* heirs were meant. In 2 Bac. Ab. 496, it is said : " But though the *Habendum* cannot retract the gift in the premises, yet it may construe and explain in what sense the words in the premises shall be taken ; for it is upon a view of the whole deed that the intent of the parties must be collected ; therefore if lands be given to a man and his heirs, *habendum* to him and the heirs of his body, this is but an estate-tail ; because the *habendum* only expounds the general word *Heir* in the premises, and such exposition is consistent, and does not destroy the operation of the words mentioned in the premises, but only explains in what sense they are to be taken, and what heirs are comprehended." While the *habendum* may expound the meaning of the word *heirs* as used in the premises, and limit it so as to make an estate-tail, it would seem that the premises, *a fortiori*, may have a like operation upon the *habendum*, and show that the heirs meant therein were the same especially designated in the

premises.    Unless this be so, then it is patent that the *habendum* is repugnant to the premises, and so must yield, and the premises have effect according to the legal import of its terms. · It is needless to repeat and discuss the principles, doctrines, and rules involved in the subject.    *In Mills* v. *Catlin*, 22 Vt. 98, *Flagg* v. *Eames*, 40 Vt. 16, *Congregational Society of Halifax* v. *Stark*, 34 Vt. 243, and in *Corbin* v. *Healey, supra,* learned judges have amply and admirably done all that is needful in that respect in statement, exposition, and application.

The judgment is reversed, and judgment rendered for the plaintiffs to recover possession and damages, according to the agreement on file.