[No. 14400. In Bank. — March 24, 1892.]

JOSEPH FAIVRE, RESPONDENT, v. THOMAS J. DALEY, APPELLANT.

HOMESTEAD — ABANDONMENT BY GRANT — QUITCLAIM DEED — CONSTRUCTION OF CODE. — The word "grant," used in section 1243 of the Code of Civil Procedure, providing that a homestead can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged by the husband and wife, is used in its generic, and not its technical, sense, and, as so used, is applicable to all transfers of real estate, and includes a quitclaim deed of the homestead executed by the husband and wife, which therefore operates as an abandonment of the homestead, and conveys to the grantee all their interest in the property.

DEEDS — CONSTRUCTION — CONFLICT BETWEEN HABENDUM AND PREMISES. — Where the language in the *habendum* of a deed is irreconcilable with that used in the *premises*, the premises will prevail; but, like the words employed in a contract, all the words employed in the deed should be given some effect, if possible, and if consistent with the evident purpose and operation of the deed.

ID. — USE OF WORD "GRANT" — QUALIFICATION OF MEANING. — The word "grant," as used in deeds, has a well-known signification, but the parties may limit or qualify its meaning, and if they choose to do so, the court should not hesitate to carry out their expressed intention.

ID. — RULES OF CONSTRUCTION — INTENTION OF PARTIES. — It is impossible to lay down an invariable and universal rule of construction of deeds. The tendency of modern decisions is to uphold conveyances, and give effect to the intention of the parties, regardless of technical rules of construction.

ID. — DEED OF GRANT — RECONVEYANCE LIMITED TO INTEREST CONVEYED — REPUGNANCE TO GRANT. — A grant, bargain, and sale deed of land containing the clause: "This conveyance is intended to reconvey and release only such title as the parties of the first part obtained to said premises by virtue of a deed from the parties of the second part to the parties of the first part," — shows the intention of the parties, upon its face, to qualify the interest granted, and to place the parties *in statu quo*, to which intention effect should be given, regardless of technical rules of

construction; and the language of such clause will not therefore be construed as repugnant to the grant, and void, thereby defeating the manifest intention of the parties.

MONEY HAD AND RECEIVED — AGREEMENT TO DIVIDE PROCEEDS OF SALE — EVIDENCE. — In an action to recover the proceeds of the sale of land conveyed by the plaintiff to the defendant, which the defendant agreed to sell and divide the proceeds thereof with plaintiff, where it appears that the land was conveyed to the plaintiff by a quitclaim deed of a husband and wife, who had a homestead thereon, and that the plaintiff conveyed to the defendant all his right, title, and interest in the property, upon the strength of the defendant's agreement to protect the plaintiff's title, to perfect it if necessary, and to sell the land for the plaintiff upon shares, and the defendant subsequently procured a deed of grant, bargain, and sale to himself from the grantors of the plaintiff and then sold the land, evidence of the grantees of the defendant, that they purchased relying upon the title which the defendant had acquired through his grant from the plaintiff's grantors, is immaterial, and is properly excluded.

ID. — FINDING — EXPENSE INCURRED BY DEFENDANT — ATTORNEY'S FEES.— A finding that the defendant agreed with the plaintiff to pay all costs and expenses which might be incurred in or about the recovery, sale, or disposal of the land being sufficiently supported by the evidence, the defendant is not entitled to a credit of money paid to an attorney for advice and assistance; and where it appears that the total amount allowed to the defendant is excessive by more than one half of such attorney's fees, the defendant could not be prejudiced by a failure to allow him such credit, even if he were entitled thereto.

ID. — ACCOUNTING. — An action for money had and received is proper where the complaint sets forth all the facts upon which the plaintiff relies for the recovery of his share of the proceeds of sale made by the defendant, and it is apparent from the evidence that no accounting is necessary; though it seems the court might order an accounting taken if necessary.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hunsaker, Britt & Goodrich,* for Appellant.

*Johnstone Jones, J. E. Deakin,* and *John M. Lucas,* for Respondent.

PATERSON, J. — George D. Carleton, a married man, became the owner of the property referred to in the complaint on January 11, 1868, and on July 7, 1868, he filed a homestead thereon. On April 8, 1870, Carleton executed and delivered to A. E. Horton a deed of con-

veyance of the property, and thereafter Horton's interest, if he acquired any, passed through mesne conveyances to S. S. Clark. The trustees of Clark's estate executed and delivered a deed of the land — grant, bargain, and sale in form — to plaintiff, on June 22, 1885, the consideration named being $7,087. On July 8, 1885, Carleton and wife executed and delivered to plaintiff and Pauly a quitclaim deed of the property. On March 1, 1886, plaintiff and Pauly executed and delivered to the Clark trustees a grant, bargain, and sale deed of the land, but the deed contained the following clause: "This conveyance is intended to reconvey and release only such title as the parties of the first part obtained to said premises by virtue of a deed from the parties of the second part to the parties of the first part." On March 18, 1886, plaintiff and defendant entered into an agreement, by the terms of which, it is alleged and found, defendant was to "sell and dispose of any part or all of the interest of the plaintiff in and to said lands and premises, and if necessary, *at his own cost and expense*, to bring suits in law or equity to recover any part or all of said interest which said plaintiff had in the said lands, . . . . and to do and cause to be done whatever he, the said Thomas J. Daley, should deem just and proper for the purpose of selling or disposing of said interest of plaintiff as aforesaid, . . . . the said defendant to pay all costs and expenses which might be incurred in or about the recovery, sale, or disposal of said lands," and was to receive one half of all moneys obtained from the sale, the other half to be paid to plaintiff. Notwithstanding the conveyance to plaintiff and Pauly of July 8th, Carleton and wife executed and delivered a grant, bargain, and sale deed of the premises to the defendant, on June 30, 1886. On October 5, 1886, the Clark trustees also executed and delivered a deed of the land to one Hensley. Hensley afterwards conveyed certain interests to Platt, Morrill, Bates, and Parrish. The defendant, on February 7, 1877, quitclaimed the larger part of the land to Platt, who took the conveyance, however, for the benefit of

himself and the other persons last named. On April 2, 1887, defendant conveyed another portion of the land to McLaren. The remaining portion he sold to Wilde and Frink.

This action was commenced on April 30, 1888, to recover one half of the sums of money received by defendant,—$5,450. Although the evidence is undisputed that defendant received from Platt the sum of ten thousand dollars for the deed of February 7th, and four hundred dollars for the deed to McLaren of April 2d, the court found that the defendant had sold plaintiff's interest in that portion of the land purchased by Platt for the sum of five thousand dollars, and his interest in that portion sold to McLaren for the sum of four hundred dollars. It is a singular fact, too, that although the court found defendant was "at his own cost and expense to bring suits, . . . . and to pay all costs and expenses which might be incurred in or about the recovery, sale, or disposal of said lands," and that all money obtained from the sale was to be equally divided between plaintiff and defendant, $562.50 was allowed the defendant as costs incurred by him in making the sale and conveyance. Plaintiff was given judgment for only $2,418.75 (that being one half of the balance remaining after deducting $562.50 from $5,400), and interest at seven per cent from August 2, 1887.

Defendant moved for a new trial, and the motion was denied. From this order and the judgment he has appealed.

The court made no finding as to the interest purchased by Wilde and Frink, but the evidence shows that the plaintiff had parted with his interest in the land sold to them before he made the deed to defendant.

It is claimed by appellant that plaintiff acquired no interest in the land through the quitclaim deed received from Carleton and wife, and if he did, such interest was conveyed by him to the Clark trustees by the deed of March 1, 1886, and therefore the defendant took nothing by the plaintiff's deed of March 18, 1886.

Conceding that the defendant, although his contract with plaintiff has not been rescinded, is not estopped from setting up these defenses, we think there is no merit in either contention.

Section 1243 of the Civil Code, upon which appellant relies, provides that a homestead can be abandoned only by a declaration of abandonment, or a *grant* thereof, executed and acknowledged by the husband and wife, but the word "grant" is here used in its generic, not its technical, sense, and as so used, is a term applicable to all transfers of real estate. Section 1053 of the Civil Code says that "a transfer in writing is called a grant, or conveyance, or bill of sale." Washburn says that "though the word 'grant' was orignally made use of in treating of conveyances of interests in lands, to denote a transfer by deed of that which could not be passed by livery, and of course was applied only to incorporeal hereditaments, it has now become a generic term, applicable to the transfers of all classes of real property, and will be used in that broad sense in speaking of the formal transfer of titles to lands. . . . . Wood, in his treatise on Conveyancing, says: 'The word "grant," taken largely, is where anything is granted or passed from one to another; and in this sense it comprehends feoffments, bargains and sales, gifts, leases in writing or by deed, and sometimes by word without writing.'" (3 Washburn on Real Property, 5th ed., 193, 375.) A statute of New Jersey provided that it should be lawful for any married female to receive, "by gift, grant, devise, or bequest, and hold to her sole and separate use as if she were a single female, real and personal property"; and the court held that the legislature did not intend to use the terms "gift" and "grant" in their technical sense, but to embrace within the meaning of the terms used all the modes of acquiring property, except, perhaps, by descent. The court said: "The Vermont statute provides that any rights in real estate which a *feme covert* may acquire by gift, grant, devise, or inheritance, during coverture, shall not be liable for the debts of the hus-

band. These words, 'gift' or 'grant,' came up for con-
struction in the case of *Peck* v. *Walter*, 26 Vt. 85, wherein
Redfield, C. J., in delivering the opinion of the court,
says: 'It is very apparent that the statute was intended
to embrace all rights in real estate which the wife shall
acquire during coverture. It would be a very nice, and
as it appears to me a very unintelligible, construction
of this statute to limit the word " grant " to its narrow-
est technical import. It evidently was intended to apply
to all conveyances by deed which were not gifts.' In
our statute, by the term 'grant,' the legislature intended
all the ordinary modes of acquiring property by deed,
whether operating by force of the statute of uses or not,
that by long usage such had become not only the popu-
lar but also the technical meaning of the term." (*Ross*
v. *Adams*, 28 N. J. L. 165.) In *Durant* v. *Ritchie*, 3 Ma-
son, 69, the court said: " The word ' grant ' is *nomen gen-
eralissimum.* It includes all sorts of conveyances." In
Wisconsin, the statute provides that a married woman
" may receive by inheritance, or by gift, grant, devise,
or bequest, from any person other than her husband,
and hold to her sole and separate use, real and personal
property." It was claimed in *McVey* v. *Green Bay etc.
R. R. Co.*, 42 Wis. 536, that the statute did not permit a
wife to acquire real estate by deed of bargain and sale,
and hold the same as her separate property. Mr. Justice
Lyon, speaking for the court, said: " But the word
'grant' has also a larger meaning in the law. It is
said in Sheppard's Touchstone that ' this word is taken
largely where anything is granted, or passes from one
to another. And in this sense it doth comprehend feoff-
ments, bargains and sales, gifts, leases, charges, and the
like; for he that doth give or sell doth grant also.' . . . .
Hence, in any view we can take of the question, we are
impelled to the conclusion that the word ' grant,' as used
in the statute, includes deeds of bargain and sale."

It is admitted that Carleton was the owner of the
property at the time the declaration of homestead was
filed; and as a quitclaim deed in this state passes all the

title which the grantor has (*Lawrence* v. *Ballou*, 37 Cal. 518), we think the deed from Carleton and wife to plaintiff was a grant, within the meaning of section 1243 of the Civil Code, which operated as an abandonment of their homestead right, and that it conveyed to plaintiff all the interest they had in the property.

The other point made by appellant is equally untenable. There is no doubt that where the language in the *habendum* is irreconcilable with that used in the *premises*, the premises will prevail; but, like the words in a contract, all the words employed in the deed should be given some effect, if possible, and if consistent with the evident purpose and operation of the deed. (*Havens* v. *Dale*, 18 Cal. 366.)

There can be no possible question as to what the parties to the deed of March 1st intended. The word "grant," as used in deeds, has a well-known significa- tion; but the parties may limit or qualify its meaning, and if they choose to do so, the court should not hesitate to carry out their expressed intention. (*Morrison* v. *Wilson*, 30 Cal. 344; *Castro* v. *Tennent*, 44 Cal. 253.) The language used in the deed is so plain and unam- biguous that the intention of the parties appears upon the face of the instrument; but if the circumstances surrounding the transaction can be considered, their intention becomes still more obvious. The Clark trus- tees were dissatisfied, and had commenced, or threatened to commence, an action to set aside their conveyance to the plaintiff. The grounds of their dissatisfaction do not appear; but plaintiff testified: "They did n't think we paid enough. We deeded it back to them, and they gave us our money back. We rescinded the contract." They doubtless believed that the plaintiff and Pauley had no title to the property at the time he attempted to convey to them. Plaintiff had paid them $7,087. This sum they repaid to him, and agreed that they (plaintiff and Pauley) should reconvey to them only such interest in the property as they had acquired through the deed of June 22, 1885. All of the parties to the deed evi-

dently desired to be placed in exactly the same position they held with respect to the property before the Clark trustees conveyed to plaintiff and Pauley. If we hold that the clause quoted above is repugnant to the grant, and therefore void, we defeat the manifest intention of all the parties. And this can be done only by the application of "subtle and unsubstantial definitions, and technical and arbitrary rules." (*Eldridge* v. *See Yup*, 17 Cal. 51.) It is impossible to lay down an invariable and universal rule of construction. The tendency of modern decisions is to uphold conveyances, and give effect to the intention of the parties, regardless of technical rules of construction. As illustrating this tendency, Mr. Devlin cites and quotes from many cases. (2 Devlin on Deeds, sec. 855.)

If our views of the case thus far expressed are correct, the remaining topics discussed in the briefs require no extended consideration.

The court did not err in refusing to consider the testimony of Platt and others to the effect that they purchased relying upon the title which defendant had acquired through his grant from · Carleton and wife. Defendant entered into the contract with plaintiff, and took as a thing of value what title the latter held, with full knowledge of all the facts. Upon the strength of his agreement to protect the title of the plaintiff, and to perfect it if necessary, the plaintiff conveyed to him all his right, title, and interest in the property, and went to Europe, trusting in the defendant to carry out his agreement in good faith. It was the duty of the defendant to protect the title which he had acquired, and make the most out of it. As a matter of fact, he paid Carleton and his wife only fifty dollars for their deed. That deed conveyed to him no interest whatever; but if it had, the defendant would have been bound to account to the plaintiff for it. (*Hardenbergh* v. *Bacon*, 33 Cal. 377.) It is immaterial what the purchasers thought they were buying. The material question is, What did the defendant convey? The only title he acquired from any

source was that which he derived through the deed from plaintiff; and that is what he conveyed. The fact that Pauley gave his interest away has no bearing upon the question.

It is claimed by appellant that there is no evidence to support the second and third findings of the court, — nothing to show, at least, that he agreed with plaintiff to pay all costs and expenses which might be incurred in or about the recovery, sale, or disposal of the lands; and that the court erred, therefore, in not deducting from the amount received by defendant the sum of one thousand dollars paid to an attorney for advice and assistance. The advice and assistance referred to consisted in an attempt to show that the plaintiff had no interest whatsoever in the land. We do not know upon what theory the court below deducted the sum of $562.50, and refused to allow the defendant anything on account of the attorney fee, unless it was that plaintiff ought not to be charged for advice which was adverse to his title. We think the finding as to costs is supported by evidence. The plaintiff testified as follows: " He agreed to give me one half. . . . . I told him I would give him one half what he got. He was to get half, and I was to get half. . . . . He first told me in San Francisco, — he said, you have made ten thousand dollars out of that transaction." This last statement the defendant did not deny. The defendant testified as follows: " I agreed to give him one half of whatever I recovered under that deed. . . . . Q. He agreed to give it to you, and you were to divide the *receipts*, was n't it? A. I think it was." The fact that plaintiff was willing to allow the defendant fifty per cent of the amount recovered should be considered, also, in determining the question as to whether the defendant agreed to pay the costs and expenses. It is true, the defendant testified that the plaintiff agreed to pay one half of the expenses, but the evidence was conflicting; the court found in favor of the plaintiff, and that finding cannot be disturbed here. But whether the finding is supported by the evidence or not, the failure of the court

to allow defendant one thousand dollars on account of attorneys' fees was immaterial, in view of the evidence as to the total amount received by defendant. It is undisputed that the defendant received ten thousand four hundred dollars for the two deeds. Assuming, therefore, that appellant is right in his contention as to costs, $1,562.50 should have been deducted from that sum, and the balance divided equally between the plaintiff and the defendant. This would have given the plaintiff a judgment for $4,418.75, instead of $2,418.75. As stated before, the only interest which the defendant held was that which he acquired from the plaintiff, and that is what he sold. The judgment was clearly for less than the plaintiff was entitled to recover, and the defendant was not prejudiced by the failure of the court to deduct the one thousand dollars paid his attorney, conceding that he was entitled to a credit on that account.

We think the court below properly computed interest on the amount found due from August 2, 1887. Plaintiff testified that on August 2, 1887, he went to the defendant's office, and inquired about the twenty thousand dollars; that the defendant said: "Ain't ten thousand dollars enough? I will pay you the money next week." But whether interest was allowable or not, for the reasons stated in the last paragraph the defendant was not prejudiced by the amount of interest included in the judgment.

It is claimed by appellant that the present action for money had and received will not lie, an accounting being necessary between the parties. The complaint, however, sets forth all the facts upon which the plaintiff relies, and it is apparent from the evidence that no accounting was necessary. If an accounting had been necessary, the court below, doubtless, would have ordered it taken.

There is no merit in the appellant's claim that the transaction was between Faivre and the firm of which the defendant was a member. The other members of the firm testified that they had no interest whatever in

the contract, — that the firm had nothing whatever to do with it, — and plaintiff testified that the defendant gave him no information that Gassen and Reed were concerned in the matter until after the sale was made.

Judgment and order affirmed.

SHARPSTEIN, J., HARRISON, J., McFARLAND, J., DE HAVEN, J., and GAROUTTE, J., concurred.