# Karchner, Executor, Appellant, *v.* Hoy.

[Marked to be reported.]

*Deed—Habendum repugnant to premises—Estate upon condition.*

An interest granted by deed, which is so fully, circumstantially and precisely defined and limited in the premises, that there can be no mistake as to the intention of the grantor, will not be defeated by the provisions of a repugnant habendum.

A grantor conveyed by deed a tract of land to Charles Shell and Catharine his wife, their heirs and assigns. After the description of the land there was the following clause: " It is expressly understood by all parties hereto that if the said Charles Shell and Catharine, his wife, should have a child or children of their two bodies begotten and born, then the land herein conveyed shall vest in the said Charles and Catharine and their heirs forever. But should this event not happen, then the said Charles and Catharine, or the survivor of either of them, shall have and enjoy a life estate in the said land." It was provided that if no issue were born the land should be sold, and the proceeds divided among certain persons mentioned. The habendum clause was as follows: "To have and to hold the said lands, hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said parties of the second part their heirs and assigns, to and for the only proper use and behoof of the said parties of the second part, their heirs and assigns forever." Catharine died before her husband, never having had any child or children. *Held,* that Charles Shell took a life estate only in the land.

*Estates tail—Fee simple—Act of April 27, 1855.*

The act of April 27, 1855, P. L. 368, converting estates tail into estates in fee simple, is not retroactive.

Argued May 23, 1892. Appeal, No. 439, Jan. T., 1892, by plaintiffs, Henry R. Karchner, executor, et al., from decree of C. P. Northumberland Co., No. 164, in equity, in favor of defendants, Charles E. Hoy et al. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Bill in equity by the surviving legal representatives, and the devisees of the grantor, Andrew Karchner, and the heirs and legal representatives of Chas. Shell, deceased, to compel the sale of real estate in accordance with provisions of deed, and for an account, against sheriff's vendee of Charles Shell's title, and the assignees of said vendee.

From the bill it appeared that by deed, bearing date Jan. 11, 1851, for the consideration of $3,261, Andrew Karchner and

wife granted and conveyed unto Charles Shell and Catharine, his wife (a daughter of the grantor), their heirs and assigns, a certain tract of land situate in Lewis township, Northumberland county, containing eight-one acres and eighty-three perches. After the description of the land and the recital of title, follows a clause in these words:

"It is expressly understood by all the parties hereto, that if the said Charles Shell and Catharine, his wife, should have a child or children of their two bodies begotten and born, then the land herein conveyed shall vest in the said Charles and Catharine and their heirs forever. But should this event not happen then the said Charles and Catharine, or the survivor of either of them, shall have and enjoy a life estate in the said land. And after the decease of the said Charles and Catharine, in the event of their having no issue born, the land shall be sold at public sale and three thousand dollars of the proceeds of sale shall be paid to the said Andrew Kerchner, or to his heirs and legal representatives, and the balance shall be paid to the heirs and legal representatives of the said Charles Shell, or to whomsoever the said Charles may direct the same to be paid by his last will and testament."

After the usual clause, "Together with all and singular," etc., follows the habendum in these words:

"To have and to hold the said lands, hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said parties of the second part, their heirs and assigns, to and for the only proper use and behoof of the said parties of the second part, their heirs and assigns forever." Then follows a clause of general warranty in common form.

Catharine Shell died on or about July 15, 1879, before her husband, never having had any child or children. On Nov. 15, 1879, "all the right, title and interest of the said Charles Shell of, in and to" the land was sold at sheriff's sale to James K. Shell, one of the defendants, and the other defendants are his assignees. Charles Shell died on Jan. 23, 1885.

The bill prayed (1) for decree of sale of the premises hereinbefore mentioned, to be made either by the above named surviving executor of Andrew Karchner, or by a master, pursuant to the directions in said deed, and that upon the confirmation

of said sale and the payment of the purchase money he be authorized to make a proper deed of conveyance of said premises to the purchaser at such sale; (2) that the said Charles E. and Daniel K. Hoy, two of the defendants above named, be ordered to account to your orators for the rent, issues and profits of the above mentioned premises since Jan. 23, 1885; (3) a decree distributing the proceeds of the said sale, together with the rents, issues and profits herein prayed for, to the respective parties to this bill as their interests may appear, and as to right and justice belongs; (4) such decree as to the costs and expenses of this proceeding and of the sale prayed for as the circumstances of the case require; and (5) further relief.

Defendants demurred to the bill. On July 18, 1891, the court, in an opinion by ROCKEFELLER, P. J., sustained the demurrer and dismissed the bill.

*Error assigned* was the decree of the court, quoting it.

*C. G. Voris,* and *William H. Hackenberg,* for appellants.— Charles and Catharine Shell took no more than a life estate to be enlarged to an estate in fee simple upon condition precedent that they have " a child or children of their two bodies begotten and born." 1 Bouvier's L. Dict. 481 ; 2 Washburn, R. Prop. 2, 5 ; 2 Bl. Com. 154 ; Westenberger v. Reist, 13 Pa. 594 ; Nicholson v. Bettle, 57 Pa. 384.

There is no repugnancy between the premises and the habendum in the deed in this case. The grantee would have taken the estate mentioned in the habendum had they complied with the condition mentioned in the premises.

If there is a clear repugnancy between the nature of the estate granted in the premises and that limited in the habendum, the latter yields to the former: Washburn, R. Prop. 439; Warn v. Brown, 102 Pa. 347 ; Tyler v. Moore, 42 Pa. 374; Wager v. Wager, 1 S. & R. 373.

The manifest intention of the parties was that the grantees should take no more than a life estate, should they fail to comply with the condition precedent that they " have a child or children of their two bodies begotten and born." The intention of the parties must prevail: 3 Washburn, R. Prop. 231; Phillip's Ap., 93 Pa. 50; Means v. Presbyterian Church,

3 W. & S. 312; Hüss v. Stephens, 51 Pa. 282; Criswell v. Grumbling, 107 Pa. 414.

Where the language of a deed is defective, but the intention of the party executing it is plain, it will be construed so as to give effect to the intention: Building Assn. v. Church, 36 Leg. Int. 276; Whitby v. Duffy, 135 Pa. 620; Ludwig v. Leonard, 9 W. & S. 47; Wharton v. Fisher, 2 S. & R. 182; Wolverton v. Haupt, 2 Ches. Co. 573.

*S. P. Wolverton, C. M. Clement* with him, for appellee.— The habendum controls the deed: Whitby v. Duffy, 135 Pa. 620. When the habendum enlarges the estate or confirms the grant it always determines the estate: Griffin v. Fellows, 81* Pa. 114; Wager v. Wager, 1 S. & R. 375; Tyler v. Moore, 42 Pa. 387; Elphinstone, Interpretation of Deeds, 250; Idle v. Cooke, 2 Ld. Ray. 1144.

The habendum may enlarge an estate expressly contained in the premises, and capable of taking effect, but may not abridge or make void any such estate: Challis, R. Prop. 310, *333; 2 Coke, Litt. § 524 (299); Mitchell, Real Estate, 433; Elphinstone on Interpretation of Deeds, 94; Preston on Abstracts, 43.

Nicholson v. Bettle, 57 Pa. 386, is not applicable to this case for the reason that it turned upon the ulterior limitation. Westenberger v. Reist, 13 Pa. 594, does not apply for the same reason. Wolverton v. Haupt, 2 Ches. Co. 573, is in favor of the position of the appellee. In that case the limitation was contained in the habendum of the deed and limited the grantee's estate to the period of her remarriage.

The words of the deed must be taken most strongly against the grantor: Charles River Bridge v. Warren Bridge, 11 Peters, 589; White v. Smith, 33 Pa. 186; Beeson v. Patterson, 36 Pa. 24; 1 Devlin, Deeds, § 220; Corbin v. Healy, 37 Mass. 514.

If the deed should not be construed to convey a fee simple to the grantee, it must be construed to convey an estate tail, which would be a fee simple under the act of 1855. If even the habendum in the deed limited the estate to the heirs of their bodies begotten this would result: Elphinstone, Interpretation of Deed, 232; 1 Wood's Conveyancing, 340; Shep.

Touch. 98; Co. Litt. 26; Armstrong's Est., 93 Pa. 209; Kleppner v. Laverty, 70 Pa. 70; Reinoehl v. Shirk, 119 Pa. 108; Lawrence v. Lawrence, 105 Pa. 339; Daley v. Koons, 90 Pa. 246; Hackney v. Tracy, 137 Pa. 53; Eichelberger v. Barnitz, 9 Watts, 447; Nicholson v. Bettle, 57 Pa. 386; Price v. Taylor, 28 Pa. 95; Vaughan v. Dickes, 20 Pa. 509; Hill v. Hill, 74 Pa. 175; Paxson v. Lefferst, 3 Rawle, 59; Smith's Ap., 23 Pa. 9; Mengell's Ap., 61 Pa. 248.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

The cardinal question, presented by the demurrer in this case, is, whether, under the deed of January 11, 1851, from Andrew Karchner and wife to Charles Shell and Catharine, his wife, the vendees took more than an estate for their joint lives, and the life of the survivor?

It is contended by plaintiffs, who claim through the grantor, Andrew Karchner, that they did not; and that, upon the decease in 1885 of Charles Shell survivor of said grantees, the land became subject to sale under and pursuant to the special provision contained in said deed.

On the other hand, the defendants contend that the grantees jointly took an estate in fee, which, upon the death of Catharine Shell, one of the grantees, in 1879, became the sole estate in fee of her surviving husband, Charles Shell, as whose property said land was afterwards sold by the sheriff and conveyed to James K. Shell, one of the defendants, under whom Charles E. Hoy and Daniel K. Hoy, two of the other defendants, claim, etc.

The facts, all of which are of course admitted by the demurrer, are fully set forth in the bill, and need not be restated.

The deed of Andrew Karchner and wife to Charles Shell and wife (the latter of whom was a daughter of the grantors), is in the usual form of deed conveying land in fee simple, except the special clause, hereinafter quoted, which follows immediately after the description of the land conveyed. After stating the date, naming the parties, etc., the deed sets forth: "That the said parties of the first part, for and in consideration of the sum of three thousand two hundred and sixty-one dollars, . . . have granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents do grant,

bargain, sell, alien, enfeoff, release, convey and confirm unto
the said parties of the second part, their heirs and assigns,
all that certain tract of land situate " etc.   Then, at the close
of the description, follows the special clause above mentioned,
viz.:

" It is expressly understood by all the parties hereto, that
if the said Charles Shell and Catharine, his wife, should have
a child or children of their two bodies begotten and born, then
the land herein conveyed shall vest in the said Charles and
Catharine and their heirs forever.   But should this event not
happen, then the said Charles and Catharine, or the survivor
of either of them, shall have and enjoy a life estate in the said
land.   And, after the decease of the said Charles and Catharine,
in the event of their having no issue born, the land shall be
sold at public sale, and three thousand dollars of the proceeds
of sale shall be paid to the said Andrew Karchner, or to his
heirs and legal representatives, and the balance shall be paid
to the heirs and legal representatives of the said Charles Shell,
or to whomsoever the said Charles may direct the same to be
paid by his last will and testament."

Then, at the close of the premises, follows the habendum, etc.,
in these words :  " To have and to hold the said lands, heredita-
ments and premises hereby granted or mentioned and intended
so to be, with the appurtenances, unto the said parties of the sec-
ond part, their heirs and assigns, to and for the only proper use
and behoof of the said parties of the second part, their heirs and
assigns forever."

What is the proper construction of this deed ?   Should it be
construed as claimed by plaintiffs, or as contended for by de-
fendants ?

It is unnecessary to refer to the well recognized elementary
rules of construction.   The object of all such rules is to ascer-
tain the intention of the parties to deeds and other written in-
struments :  Wager v. Wager, 1 S. & R. 374.   Seeking for that
intention in the deed itself, there ought to be no difficulty in
reaching the conclusion that the intention of the parties was
as claimed by plaintiffs.   The words, " grant, bargain, sell, . . .
convey and confirm unto the said parties of the second part,
their heirs and assigns," immediately preceding the description
of the land conveyed, must of course be considered in connec-

tion with the special clause which immediately follows that description. The manifest purpose of the special clause was to qualify and limit the preceding words of inheritance,— "their heirs and assigns;" and the exact extent to which these general words of inheritance are thus qualified and restricted is left in no doubt. The precise meaning is as plain as the English language can make it,—so plain, indeed, that he who runneth may read.

The parties doubtless realized that said words of inheritance, standing alone, unexplained and unqualified, would make the quantum of interest conveyed greater than was intended, except in the event that the grantees "should have a child or children of their two bodies begotten and born;" and then accordingly declares, in the premises of the deed, as follows: "It is expressly understood, by all the parties hereto," that "*then,*" to wit: upon the happening of said event, "the land herein conveyed shall vest in the said Charles and Catharine and their heirs forever. But should this event not happen, then the said Charles and Catharine or the survivor of either of them, shall have and enjoy a life estate in the said land. And after the decease of said Charles and Catharine, in the event of their having no issue born, the land shall be sold at public sale," etc., as therein provided. The event, upon the happening of which the joint estate would have been enlarged into a fee simple, did not happen. Indeed it became impossible by the death of Mrs. Shell in 1879. That left nothing in her surviving husband save his life estate, without any possibility of enlargement thereof. Beyond the term of his natural life, he had no control of the land, or of the proceeds thereof when it should be sold, after his death, save the power of appointing by will the person or persons to receive the proceeds in excess of the $3,000.

We think the quantum of interest intended to be conveyed is clearly and expressly defined in the premises of the deed. If the habendum were entirely eliminated from the instrument, it would still be an undoubtedly good and valid conveyance of the estate intended to be granted.

Whether we regard the special provision for enlarging the estate into a fee, in the event of the grantees having "a child or children of their two bodies begotten and born," as a con-

dition *precedent* to such enlargement or not, the result is the same. Nor, does it make any difference that the provision referred to is separated from other clauses or phrases relating to the quantum of interest. Ordinarily, conditions in a deed are created by such words as, "on condition," "provided that," "so that," etc., which of themselves make a condition; and, by other less direct phrases, such as, "if it happen," and many others which do not of themselves constitute a condition without other words of explanation. In short, there are no precise words to make a condition precedent or subsequent; nor, does it depend on the prior or posterior collocation of the clause. It is to be construed according to the intention, as gathered from the whole instrument: 2 Minor's Inst. 228, and authorities there cited.

But, notwithstanding the clearness and precision with which the quantum of interest, intended to be conveyed, is defined by the special clause in the premises,—evidently inserted there for that express purpose,—it is contended that full force and effect must be given to the more general words of the habendum, as enlarging the estate into a fee simple absolute, whether the grantees "should have a child or children of their two bodies begotten and born," or not. Ordinarily, that would be the legitimate effect of an habendum enlarging an estate described in less specific terms in the premises; but, in the circumstances, and for reasons already suggested, we cannot assent to the defendant's contention, in that regard.

Originally, under the feudal system, the office of the habendum and tenendum clause was to define the quantity of interest or the estate which the grantee is to have in the property granted, and the tenure upon or under which it was to be held. Since the practical abolition of feudal tenures, the only object of the clause is to state the character of the grantee's estate. But, although the words of limitation usually appear in the habendum, as an independent clause of the deed, it is not necessary that they should, if they appear in some other part, as in the premises. So unimportant is the habendum that if it is hopelessly repugnant to the limitation appearing in the premises, it will be ineffectual to control the latter. But if, by any fair construction, the premises and habendum

may be reconciled, so that both can stand, effect will be given to both: 2 Am. & Eng. Enc. Law, 456.

If, in this case, the event or condition of affairs had occurred, upon the happening of which, the estate, according to the express provision of the special clause in the premises, was to be enlarged to a fee, there would have been no want of harmony between the premises and the habendum. That event, however, never happened, and the land conveyed never vested "in the said Charles and Catharine and their heirs forever," as expressed in said clause.

Why the habendum was not so worded as to harmonize in all respects with the special clause contained in the premises, expressly defining the interest granted, etc., does not appear. Perhaps it may have resulted from using or following the form of an ordinary deed in fee without making the necessary changes in phraseology. But, it matters not how or why it occurred. Certain it is, the interest granted is so fully, circumstantially and precisely defined and limited in the special clause referred to, that there can be no mistake, in that regard, as to the expressly declared understanding and intention of the parties to the deed; and there appears to be no good reason why that intention should not prevail.

We cannot assent to the defendants' position, in support of which numerous authorities are cited in the last fifteen pages of their paper book, that if the deed should not be construed to convey a fee simple to the grantees, "*it must be construed to convey an estate tail,*" which, under our act abolishing such estate, would be a fee simple. The authorities cited are not in point. Moreover, the act of April 27, 1855, declaring "Whenever hereafter," etc., has never been supposed to be retroactive. The deed in question appears to have been executed and acknowledged in January, 1851.

For reasons above suggested, we think the learned president of the common pleas erred in holding that, under the deed in question, the grantees took an estate in fee in the land therein described, and in dismissing the bill. The decree sustaining the demurrer and dismissing the bill must, therefore, be reversed; and the cause will be proceeded in according to equity practice. If, on the coming in of an answer, etc., the cause does not assume a materially different shape, a decree for sale of the

land, as prayed for, should be made, and a master appointed to make the sale, etc. Plaintiffs will also, if found necessary, be entitled to an account as prayed for.

Decree reversed and appeal dismissed, with costs, to be paid by appellees; and it is ordered that the bill be reinstated and the record be remitted with instructions to proceed according to equity practice.