In re Estate of Ruth E. Fleck, deceased.

George D. Fleck, executor, appellee, v. George D. Fleck individually, et al., appellants.

No. 52738.

(Reported in 154 N.W.2d 865)

December 12, 1967.

Herrick, Langdon, Belin & Harris, of Des Moines, for appellants.

Mack, Mack & Hansen, of Storm Lake, for appellee.

RAWLINGS, J.—A deed was executed by Abner J. Bilsborough and his wife Ellen in January 1900, the material portion of which provided: ·

"That we Abner J. Bilsborough and Ellen Bilsborough his wife, * * * do give and convey to Ruth E. Bilsborough and her heirs the following described premises situated in the county of Lyon and State of Iowa to wit: the North East quarter (N.E. ¼) of Section Twenty-eight (28) in township One Hundred (100) North of Range forty-three (43) West of the 5th Principal Meridian together with all the privileges and appurtenances to the same belonging To have and to hold the same to the said Ruth E. Bilsborough and her heirs forever. * * * Nevertheless on the following conditions viz: that all of the rents, issues and profits shall be payable to either of the surviving grantors up to March 1st 1908 and One Hundred Dollars each year thereafter during the natural life of either grantor and that said Ruth E. Bilsborough shall have no power or authority to sell, mortgage, or alienate the whole or any part of the said property or to sell, alienate or anticipate the whole or any part of the rents, profits, or issues thereof nor shall the property be liable for any debt or debts contracted by the said Ruth E. Bilsborough or for any judgments obtained against her in any Court of Law or Equity, but it shall be kept

free and unincumbered and shall so descend to her children. And as soon as convenient after her death her said children shall have lawful authority to sell and convey the property and divide the money equally amongst them share and share alike Except some one or more of the said children should not have become of age in which case the property shall not be sold until such time as the youngest child shall have obtained his or her majority.

"Nevertheless if the said Ruth E. Bilsborough shall leave a husband and he and her children should prefer living together on the property they shall have power to defer the sale of it until such time as they or a majority of them think fit. But if it should so happen that the said Ruth E. Bilsborough should die leaving no children then the said property shall be sold as soon as convenient after her death and the money arising from such sale shall be divided equally amongst her brothers and sisters or their estates share and share alike."

The grantors and Ruth E. Bilsborough (Fleck), hereinafter sometimes referred to as Ruth, have since died, she leaving no issue surviving.

By action for declaratory judgment plaintiff-executor of Ruth's estate sought an adjudication of rights in the property here involved.

Defendants claim title vested on Ruth's death in her brothers and sisters or their estates, and they are entitled to any proceeds derived from sale.

The trial court, by application of the repugnancy rule, found adverse to this contention and defendants appeal. We reverse.

I. The ultimate question for determination by this court is whether under the terms of the foregoing deed title passes to the estate of Ruth, or to her brothers and sisters or their estates.

Many decisions in this and other states are in varying degrees of conflict as to the interpretation and construction to be accorded comparable instruments of conveyance.

The holding in some of these opinions would apparently lead to the conclusion Ruth was granted a title in fee simple, with which subsequent provisions of the conveying instrument

are so in conflict as to bring the rule of repugnancy into play. This is the basis upon which the trial court held against defendants.

Undoubtedly the repugnancy doctrine is sound where applicable. See 26 C.J.S., Deeds, sections 90, page 836, and 129, page 974, and 41 Iowa Law Review 602, note 5.

But under the factual situation presented in the case at bar it does not apply.

In fact we are persuaded the deed here involved created a fee simple estate on executory limitation. See generally 28 Am.Jur.2d, Estates, sections 333–345, pages 538–552.

II. Addressing ourselves now to the matter of apparent conflict in Iowa case law on the subject at hand, we turn first to an interesting article written in 1956, wherein the author stated in part: "* * * ramifications of what may be called the 'repugnancy rule' have arisen in at least a hundred Iowa cases. Three of them were decided within the last year. * * * It is time for reappraisal." 41 Iowa Law Review 601.

See also Guilford v. Gardner, 180 Iowa 1210, 1223, 1224, 162 N.W. 261.

We shall therefore adhere, in large part, to relevant delineating case law and text material.

III. According to the early common law there could be no limitation of a fee after a fee, nor could there be a fee in one person with a valid provision that upon the happening of a specified event the fee should shift to another. The fee created in the grantee could be defeated only by the grantor's taking advantage of the breach of some condition and making an entry, thus regaining possession in himself; because the giving effect to a provision that the fee should go over from the first tenant in fee to another would have involved a transfer of possessory right without the required ceremony of actual delivery of possession. But neither under the modern law, nor in the nature of the thing itself, is there anything which prohibits limitation of a fee after a fee, nor any reason why that may not be done as well by deed as by will. Where it is done, the fee in the second taker becomes effective upon the happening of an event which by the terms of the instrument displaces the first fee and substitutes another in

its place. See Editorial comment, 17 A.L.R.2d 12, and Harder v. Matthews, 309 Ill. 548, 141 N.E. 442, 445.

■ Briefly stated, this court is persuaded the early rule at common law to the effect a fee could not be limited after a fee has in modern times been in large part realistically superseded by the generally prevailing view that a fee may be limited by resort to the devise of executory limitation.

IV. One standard, here of special significance, is that a deed should be construed, if at all possible, to effectuate the intent of the grantor.

As stated in 23 Am.Jur.2d, Deeds, section 159, pages 205, 206:

"When, and only when, the meaning of a deed is not clear, or is ambiguous or uncertain, will a court of law or equity resort to established rules of construction to aid in the ascertainment of the grantor's intention by artificial means where such intention cannot otherwise be ascertained. Unlike a settled rule of property which has become a rule of law, rules of construction are subordinate and always yield to the intention of the parties, particularly the intention of the grantor, where such intention can be ascertained. Since all rules of construction are in essence but methods of reasoning which experience has taught are best calculated to lead to the intention of the parties, generally no rule will be adopted that tends to defeat that intention.

"The primary rule of construction is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible, when contrary to no settled rule of property which specifically ingrafts a particular meaning upon certain language, or when not contrary to, or violative of, settled principles of law or statutory prohibitions."

This court has followed and applied the foregoing concept on several occasions. See Switzer v. Pratt, 237 Iowa 788, 797, 798, 23 N.W.2d 837; Iowa Farm Credit Corp. v. Halligan, 214 Iowa 903, 905–907, 241 N.W. 475; and Shaull v. Shaull, 182 Iowa 770, 773–783, 166 N.W. 301, 11 A.L.R. 15. See also Thompson v. Thompson, 330 Mich. 1, 46 N.W.2d 437, 439.

And as stated in 26 C.J.S., Deeds, section 131, pages 981, 982: "* * * if possible, a clause should not be construed as

repugnant to the grant and therefore void so as to defeat the manifest intention of the parties."

But see Crecelius v. Smith, 255 Iowa 1249, 1254, 1255, 125 N.W.2d 786; Dolan v. Newberry, 204 Iowa 443, 446–448, 215 N.W. 599; and Prindle v. Iowa Soldiers' Orphans' Home, 153 Iowa 234, 238, 239, 133 N.W. 106.

V. In connection with the foregoing this court said in Husted v. Rollins, 156 Iowa 546, 553, 554, 137 N.W. 462, 465, 42 L.R.A., N.S., 378:

"Under the common law, and indeed under all statutes with which we are familiar, the object of a *habendum* clause is to define the grantee's estate. But it was also true that if the premises, meaning all that part of the deed which went before the *habendum*, granted an estate in fee simple as 'to the grantee and his heirs' or 'to the grantee, his heirs and assigns,' the estate conveyed was in fee simple, although there was no *habendum*. Again, under the same law, if the granting clause was either silent or ambiguous as to the estate intended to be conveyed, the *habendum* was resorted to in order to ascertain the nature of the estate. At common law the rule quite generally announced was that while the *habendum* might be resorted to to explain, enlarge, or qualify the estate granted, it would not be allowed to contradict or defeat the estate granted in the premises. At common law, if the word 'heirs' or its equivalent was not used, the grantee took a life estate only by implication; but here the presumption might be enlarged or qualified by the *habendum* clause. But if the premises expressly granted an estate in fee, the conveyance could not be wholly annulled by anything in the *habendum*. Kelly v. Hill (Md.) 25 Atl. 919; Breed v. Osborne, 113 Mass. 318; Faivre v Daley, 93 Cal. 664 (29 Pac. 256) ; Karchner v. Hoy, 151 Pa. 383 (25 Atl. 20).

"Notwithstanding these somewhat arbitrary rules, common-law courts have almost universally given effect to both the granting clause and the *habendum* whenever it was possible to do so by fair construction. Thompson v. Carl, 51 Vt. 408; Rowland v. Rowland, 93 N.C. 220; Tyler v. Moore, 42 Pa. 374; Jamaica Pond v. Chandler, 9 Allen (Mass.) 159. Again, if the estate is briefly defined in the premises and more specifically in the *habendum*, the latter will control, for that is its office. Karchner v.

Hoy, 151 Pa. 383 (25 Atl. 20); Doren v. Gillum, 136 Ind. 134 (35 N.E. 1101).

■ "The modern rule, and the one we have adopted, is to construe the whole instrument without reference to the formal divisions in order to effectuate, if possible, the grantor's intent. Beedy v. Finney, 118 Iowa 276."

See also Shultz v. Peters, 223 Iowa 626, 631–633, 273 N.W. 134; Blair v. Kenaston, 223 Iowa 620, 624, 273 N.W. 184; Iowa Farm Credit Corp. v. Halligan, 214 Iowa 903, 906, 907, 241 N.W. 475; Harder v. Matthews, 309 Ill. 548, 141 N.E. 442, 444; Pryor v. Richardson, 162 Tenn. 346, 37 S.W.2d 114, 115, 116; and annotations, 58 A.L.R.2d 1374.

■ We are satisfied the granting clause and additional provisions or habendum are to be construed together, to the end that intention of the parties manifested by the language employed be given full effect so far as it can be ascertained, and not in conflict with applicable rules of law.

■ VI. It appears to us the principle to be applied under the factual situation presented in the case at hand is succinctly stated in 28 Am.Jur.2d, Estates, section 354, pages 560, 561: "The rule against remainders after a fee does not prevent the limitation of an executory interest after a fee already granted. For a long time it has been well settled both in England and in this country that a fee may be limited after a fee by a conveyance operating under the statute of uses or by way of an executory devise, provided the contingency operating to defeat the estate of the first taker is not violative of the rule against perpetuities. The common-law doctrine of repugnancy between the two estates, which was perfectly rational on the assumption on which it proceeded, has given way to the more just and reasonable view, which regards the prior gift, although made in words which, standing alone, import an absolute estate, as restrained by the subsequent limitation and as conferring an estate subject to be cut off by the happening of a stated event. Such estate is, technically and properly, a defeasible fee simple, because it is liable to be cut off, but it is none the less a fee simple. The decisions of a few of the courts have gone further and have stated that this prior estate, although properly denominated a 'fee,' because it may last forever, is nevertheless

a base or determinable fee, because it is liable to be defeated by the happening of the contingency on which it is limited. In other words, in such a case, as the limitation is construed, an absolute fee is not given to the first taker; he takes only a qualified or determinable one." See also Restatement, Property, section 46.

Interwoven with the foregoing is the following in 28 Am.-Jur.2d, Estates, section 363, pages 571, 572: "A common contingency on which an estate in fee is to be defeasible and on which the estate is to go to another is the failure of issue of the first taker, and an executory limitation of this nature is valid where it contemplates the failure of issue during the life of the first taker, and not an indefinite failure of issue. Such a limitation is not within the rule against perpetuities. If the gift over is ever to take effect, it will do so at the expiration of the life of the first taker; the estate is certain to vest somewhere absolutely at that time. The rule is equally well settled that an executory limitation which is to take effect on a general or indefinite failure of issue is void. It violates the rule against perpetuities."

When these basic precepts are applied to the facts in this case, it becomes evident the grantors created a fee simple defeasible estate in Ruth, subject to termination if Ruth should die leaving no children. That in fact is what did here happen. This means there was a definite failure of issue during the life of Ruth, the first taker, *not* an indefinite or general failure of issue.

Pursuing this matter one more step: "* * * a definite failure of issue exists where a precise time is fixed for the failure of issue, not in express terms, but inferable with reference to any particular time or event, as in the case of a devise to a designated person, but if he dies without lawful issue living at the time of his death, then over. An indefinite failure of issue is the very converse of the other and means a failure of issue whenever it shall happen, sooner or later, without any definite period within which it must happen. Such failure means the period when the issue or descendants of the first taker become extinct and when there is no longer any issue of the issue of the grantee, without reference to any particular

time or any particular event; and an executory devise to take effect at such a remote period of time is void, because it might tie up property for generations." 28 Am.Jur.2d, Estates, section 363, page 572.

VII. The interest of Ruth's brothers and sisters or their estates is well illustrated in 1 American Law of Property, section 4.55, page 500: "* * * A may convey to B and his heirs, but if B die without leaving children him surviving, then to C and his heirs. C has an executory interest."

In the instant case the "C" of which the author speaks is the brothers and sisters of Ruth or their estates. They, by the subject deed, were granted an executory interest or a right in futuro. See also 1 American Law of Property, section 4.53, pages 497–499.

It is apparent the grantors provided their own unique method by which to carry out a specific intention. Basically this deed provides: A to B and her heirs. If B die with issue then to them. But if B die without issue, then to C, D and E, or their estates.

Referring again to 41 Iowa Law Review 601, 604, the author states: "* * * all thoughtful case law upholds an executory devise contingent upon some specified event which is not contrary to public policy or void under the Rule Against Perpetuities, e.g., to 'B and his heirs but if B die without issue surviving him, then to C and his heirs.' This type of limitation may indirectly affect marketability, but it is not regarded as a direct restraint on alienation. This conclusion is necessary because the existence of any type of future interest impedes the ease with which an unencumbered fee may be alienated. When the above restriction is coupled with an additional contingency—'and without having alienated the land,'—it is surprising that courts invalidate the executory devise. This seems wholly fallacious because the first restriction in itself renders the land virtually unmarketable, and the additional provision simply enlarges rather than restricts the privileges of the first taker, a result which many would regard as wholly desirable. In this situation, the *Restatement* [Property, section 406, comment g.] would have us (correctly, it would seem) ignore the

usual effect of the without-having-alienated clause, and the gift over is declared valid."

VIII. We attach no special significance to use of the words "and her heirs forever" in the original grant to Ruth.

At common law words of inheritance, such as the word "heirs", were required in a deed in order to create an estate in fee simple. See 28 Am.Jur.2d, Estates, section 14, page 87.

But by statute Iowa has changed that rule, such words of inheritance being no longer essential to the creation of a fee. Section 557.2, Code, 1966. In re Estate of Hogan, 259 Iowa 887, 890, 146 N.W.2d 257.

IX. Since enactment of the Statute of Uses, executory interests may be validly created as legal estates by deed.

1 American Law of Property, section 1.32, page 44, deals with this matter as follows: "Likewise [before the Statute of Uses], A could enfeoff B in a fee simple to the use of C in fee simple, but if C should die without surviving children, then to the use of D in fee simple. On the happening of the condition —namely, C's death without surviving children—the use would shift from C to D. The interest of D was described as a shifting use. When the Statute of Uses was enacted, it operated to transform the shifting and the springing use into corresponding legal interests. Thus, a unique type of future interest arose, which was neither reversionary interest nor remainder. * * * the springing and the shifting use, as well as analogous types of future interests created by will, came to be called executory interests." See also 10 Iowa Law Bulletin 89, 94.

Code section 557.2 has the same net effect as the Statute of Uses, without the undesirable technicalities which attend the latter.

As stated in 6 Iowa Law Bulletin 198, 206, 207: "The legal limitations that became possible under the statute [of uses] are familiar to us in wills under the name of executory devises. In deeds certain of them are familiar as conditional limitations. Had there been some easy name such as executory devises to designate these executory interests when created by deed it is probable that we should not have had such dicta as that in Leaver v. Gauss [62 Iowa 314, 17 N.W. 522]. The terms 'springing uses' and 'shifting uses' have such a forbidding

sound as to check familiarity with the very up to date and useful interests which they designate.

"In Iowa, the adoption of these executory interests was not left to speculation. In the Code of 1851 it was provided that 'estates may be created to commence at a future day'. This could mean but one thing, the freehold *in futuro*. There was no occasion to say anything about remainders as there was no attempt made to cover the law of estates, and remainders were too much a part of the common law to need mention. Without this statute, the freehold *in futuro* would have been a part of our law but recourse would then have had to be made to the Statute of Uses and such technicalities as had grown up in connection therewith. With this statute in force there has been no need to inquire whether a conveyance can operate as a bargain and sale or a covenant to stand seised in order that it should create a freehold *in futuro*. Freeholds *in futuro* are recognized legal interests capable of arising by any instrument that answers the requirements of our statutory deed. Seventy years ago our legislature took the step, now contemplated in Parliament, of superseding the Statute of Uses in so far as resort to it had been necessary to create these executory interests, by a more modern statute." See also section 557.6, Code, 1966.

X. Under a factual situation other than that here presented, some question might be posed by the presence of those provisions in the deed now before us to the effect, "* * * Ruth E. Bilsborough shall have no power or authority to sell, mortgage, or alienate the whole or any part of the said property or to sell, alienate or anticipate the whole or any part of the rents, profits, or issues thereof nor shall the property be liable for any debt or debts contracted by the said Ruth E. Bilsborough or for any judgments obtained against her in any Court of Law or Equity, but it shall be kept free and unincumbered * * *."

However it is neither necessary nor do we here draw any conclusion as to the legal effect of this limitation on alienability. Ruth died without either an attempt to so alienate, or to question this provision of the deed. Stated otherwise the issue is moot, unless its presence would serve to somehow create a

repugnancy. And, under existing circumstances we find no irreconcilable conflict by virtue of the restraints here imposed.

On this subject see generally, Swenson, Possessory Estates and Future Interests in Iowa, 36 I.C.A. 73, 122.

XI. We conclude, since Ruth E. Bilsborough (Fleck), original taker, died leaving no issue surviving, all rights in the property here concerned vested, on her death, in her brothers and sisters or their estates.

Reversed and remanded for entry of decree consistent with this opinion.

All JUSTICES concur.