(No. 14244.—Reversed and remanded.)

FAY B. HARDER, Appellant, *vs.* BEN H. MATTHEWS *et al.* Appellees.

*Opinion filed October 20, 1923—Rehearing denied Dec. 5, 1923.*

1. DEEDS—*when a granting clause is sufficient to convey a fee simple.* A granting clause in a deed reciting that the grantor does "alien, release, remise and quit-claim unto the said party of the second part, and to her heirs and assigns," is sufficient to convey a fee simple.

2. SAME—*when habendum clause has no effect to change nature of estate granted.* Where the granting clause in a deed recites that the grantor aliens, releases, remises and quit-claims the premises to the grantee, "and to her heirs and assigns," but contains a proviso directing that in the event of the death of the grantee without a living descendant the land shall revert or go over to the living grandchildren of the grantor, an *habendum* clause reciting that the grantee and her heirs are to have and to hold the premises to their use forever does not change the nature of the estate conveyed by the granting clause, which is subject to the limitation in the proviso.

3. SAME—*effect of use of word "heirs" in granting clause of deed.* In all deeds which do not contain words of inheritance the estate granted may be defined or limited by language used in any part of the deed, but where the word "heirs" is used in the granting clause no limitation in the *habendum* clause can have any effect to reduce the estate granted, and section 13 of the Conveyances act cannot be resorted to in construing the estate granted by the deed.

4. SAME—*premises of deed and habendum clause are to be construed together.* The premises of a deed and the *habendum* clause are to be construed together, and the intention of the parties manifested by their language will be given effect so far as it can be ascertained and is consistent with the rules of law.

5. SAME—*when the estate granted is determined by habendum clause.* Where the granting clause in a deed does not define the estate conveyed, the *habendum* is efficient to declare the estate intended and to rebut any implication arising from the omission to describe the estate in the preceding clause.

6. SAME—*conditional limitation is void where first taker may dispose of fee.* Where a fee is conveyed to a grantee subject to a conditional limitation, upon the happening of which the estate is to go over to another, the limitation is void if the grantee has been given power to dispose of the fee by alienation or devise and to thereby destroy the estate subsequently limited.

7. SAME—*fee may be limited upon a fee in same deed.* Where a grantor for an express consideration aliens, releases, remises and quit-claims certain premises unto the grantee "and to her heirs," with a proviso that if the grantee shall die without living descendants the fee shall revert or go over to the grandchildren of the grantor, the limitation over is valid even though words of inheritance have been used in the granting clause, and the Statute of Uses will operate to transfer the seizin by shifting use to the second taker upon the happening of the condition.

8. SAME—*when condition must take effect during existence of particular estate.* Where the granting clause in a deed provides that in the event of the death of the grantee without a living descendant the land shall revert or go over to the living grandchildren of the grantor, "said grantor also reserving the use, occupation, rents and profits of said land during his natural life," the grantee's death without a living descendant must take place during the lifetime of the grantor before the limitation over can take effect, and the grantee, if living at the grantor's death, will take the estate discharged of the limitation over.

9. SAME—*meaning of words "if a particular estate precedes a gift over."* In the rule providing that if a particular estate precedes a gift over, the latter will usually take effect if the contingency happens at any time during the period of the particular estate, the words "if a particular estate precedes a gift over" do not refer to the precedence of the language used but to the precedence in time of enjoyment of the particular estate over the subsequent estate. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11, explained.)

10. SAME—*nature of the estate conveyed by deed must be determined from the deed itself.* The nature and extent of the estate granted by a deed are to be determined as a matter of law from the instrument itself, and it is not permitted to go beyond the four corners of the deed to ascertain the intention.

11. SAME—*extent to which parol evidence is admissible in construing deeds.* In construing a deed, parol evidence may be received to apply the deed to the subject matter but not to change the legal effect of the deed or to exempt its language from an established rule of construction.

12. APPEALS AND ERRORS—*when Supreme Court will consider point raised for first time on rehearing.* Ordinarily a new point cannot be raised in a reply brief or for the first time on petition for rehearing, but where the point raised is a fundamental principle of the law of estates and conveyances, and is such that, if sustained, it will finally determine the rights of the parties, the court will give the opposite party an opportunity to answer the point and will consider it.

CARTWRIGHT and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Pike county; the Hon. FRED G. WOLFE, Judge, presiding.

WILLIAM & BARRY MUMFORD, for appellant.

FISHER, BOYDEN, KALES & BELL, and CAPPS & WEAVER, (WALTER L. FISHER, and THOMAS L. MARSHALL, of counsel,) for appellees.

BEN H. MATTHEWS, *pro se.*

Mr. JUSTICE DUNN delivered the opinion of the court:

John Hull on December 11, 1903, executed the following deed to his grand-daughter, Fay A. Barney:

"This indenture, made this 11th day of December, in the year of our Lord one thousand nine hundred and three, between John Hull, Sr., unmarried, of the county of Pike and State of Illinois, party of the first part, and Fay A. Barney, daughter of Lizzie Hull Barney, of the county of Pike and State of Illinois, party of the second part:

"*Witnesseth,* that the said party of the first part, for and in consideration of the sum of $100 to him in hand paid, the receipt of which is hereby acknowledged, do alien, release, remise and

quit-claim unto the said party of the second part, and to her heirs and assigns, three certain tracts or parcels of land, with the appurtenances, lying and being in the county of Pike and State of Illinois, described as follows, to-wit: The southeast quarter of section thirty-two (32), township five (5), south, range three (3), west of the fourth principal meridian; the northeast quarter of section five (5), township six (6), south, range three (3), west of the fourth principal meridian; and 38.34/100 acres off the west end of 73.34 acres off the north end of southeast quarter of section eight (8), township six (6), range three (3), west of the fourth principal meridian: *Provided, however,* that if the said Fay A. Barney shall die without living child or children or descendants of child or children, then said lands and premises shall revert and go to and the title vest in the living grandchildren of said John Hull, Sr., said grantor also reserving the use, occupation, rents and profits of said land during his natural life.

"To have and to hold the aforesaid granted premises to the said party of the second part, her heirs and assigns, to her and their use and behoof forever, including the release and waiver of the right of homestead, except the reservation above named.

"In testimony whereof the said party of the first part has hereunto set his hand and seal on the day and year first above written.

JOHN HULL. (Seal.)"

The grantee married Frank B. Harder, and afterward, on March 7, 1910, the grantor died intestate, leaving grandchildren his only heirs. Since his death the grantee has been in possession of the land described in the deed. She filed a bill in the circuit court of Pike county to quiet her title and made the other heirs of her grandfather defendants, alleging that the proviso in the deed, viz., *"Provided, however,* that if the said Fay A. Barney shall die without living child or children or descendants of child or children, then said lands and premises shall revert and go to and the title vest in the living grandchildren of said John Hull, Sr.,*"* is a void attempt to attach an unlawful restriction or limitation upon the title already granted by the preceding parts of the deed and constitutes a cloud upon the title. The prayer of the bill was that the title in fee simple absolute be decreed, established and confirmed in the complainant. The defendants answered but no issue of fact was

raised, the court construed the deed as conveying a fee subject to be terminated by the death of the grantee "without living child or children or descendants of child or children," the bill was dismissed at the complainant's costs, and she appealed.

The deed conveyed a fee simple to the appellant defeasible upon her death leaving no living descendant. The instrument was in form similar to those in common use before the general adoption of the short-form of conveyance authorized by the act of 1872 concerning conveyances, and contained the essential parts of a deed of conveyance as set forth in Blackstone's Commentaries, (vol. 2, p. 309 and following pages,) the premises including everything before the *habendum* and containing the parties, the consideration and the grant, followed by the *habendum*. The language of the granting clause, "alien, release, remise and quit-claim unto the said party of the second part, and to her heirs and assigns," is sufficient to convey a fee simple, which would be indefeasible if it were not controlled by the proviso in the same clause, directing that in the event of the death of the grantee without a living descendant the land should revert and go to the living grandchildren of the grantor. The proviso occurs in the granting clause or premises of the deed, and the conveyance is therefore not subject to the rule of construction that the *habendum* clause in a deed cannot divest or control an estate already granted by the deed but is void so far as it is repugnant to the estate granted. This established rule of the construction of deeds has been recognized in this State. (*Riggin* v. *Love,* 72 Ill. 553; *Eckhart* v. *Irons,* 128 id. 568; *Sassenberg* v. *Huseman,* 182 id. 341; *Welch* v. *Welch,* 183 id. 237.) In *Morton* v. *Babb,* 251 Ill. 488, the estate granted was defined by the granting clause in the premises of the deed and was held to be defeasible upon the death of the grantee without issue, with a reversion to the grantor and his heirs in that event, and the rule was applied that the *habendum* to

the grantee, his heirs and assigns forever, being repugnant to the granting clause, was without effect. While it was said there was no magic in the use of the word "heirs" which excludes the possibility of explaining or defining the estate granted, nevertheless the use of that word is very potent in conveyances, its use in the granting clause in a deed does prevent the reduction by the *habendum* of the estate granted, and prevents the application of section 13 of the act concerning conveyances to the construction of the deed. The rule was also referred to in *Smith* v. *Tucker*, 250 Ill. 50, where the grant was to the grantee, his heirs and assigns, but was immediately followed by a statement in the granting clause that the deed was only to remain in full force and effect during the lifetime of Sarah J. Keel, the grantor, and at her death to go back to her heirs, and it was held that the estate described in the granting clause and conveyed by the deed was an estate for the life of Sarah J. Keel. This rule is also applied to the construction of deeds in the courts of other States. *Winter* v. *Gorsech*, 51 Md. 180; *Smith* v. *Smith*, 71 Mich. 633; *Robinson* v. *Payne*, 58 Miss. 690; *Marsh* v. *Morris*, 133 Ind. 548; *Wilkins* v. *Norman*, 139 N. C. 40; *Carl-Lee* v. *Ellsberry*, 82 Ark. 209; *Flagg* v. *Eames*, 40 Vt. 16.

The *habendum* in the deed in question, "to the said party of the second part, her heirs and assigns, to her and their use and behoof forever," being inconsistent with the limitation in the granting clause of the estate over upon the happening of the condition, is to that extent void. The premises and the *habendum* are to be construed together, and the intention of the parties manifested by their language will be given effect so far as it can be ascertained and is consistent with the rules of law. (*Pool* v. *Blakie*, 53 Ill. 495; *Eckhart* v. *Irons, supra.*) Where the granting clause does not define the estate conveyed, the *habendum* is efficient to declare the estate intended and to rebut any implication arising from the omission to describe the estate in

the preceding clause. (*Riggin* v. *Love, supra; Welch* v. *Welch, supra.*) The rule is that the *habendum* cannot cut down the estate granted, but in some cases it has been held that it may enlarge the estate.

Since 1837, by virtue of the statute, (Laws of 1837, p. 14,) which is now section 13 of chapter 30 of the Revised Statutes, concerning conveyances, words of inheritance are unnecessary to the conveyance of a fee, and every estate conveyed where words of inheritance are not used is deemed a fee simple if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by operation of law. In all deeds, therefore, which do not contain words of inheritance the estate granted may be defined or limited by language used in any part of the deed, without reference to the rule of construction as to the granting clause. (*Cover* v. *James,* 217 Ill. 309; *Stoller* v. *Doyle,* 257 id. 369; *Buck* v. *Garber,* 261 id. 378; *Cutler* v. *Garber,* 289 id. 200; *Riggin* v. *Love, supra; Welch* v. *Welch, supra.*) It has been held that this section does not apply to conveyances which do contain words of inheritance, and its provisions are therefore not to be resorted to in construing the estate granted by the deed here in question, which does contain words heretofore necessary to transfer an estate of inheritance. *Wolfer* v. *Hemmer,* 144 Ill. 554; *Morton* v. *Babb, supra; Ashby* v. *McKinlock,* 271 Ill. 254.

It is contended on behalf of the appellant that the estate conveyed to her being a fee, the grantor could not limit another fee to take effect after the happening of a condition upon which the deed provided the fee should pass to another. Her counsel state the proposition in this way: That when, by a deed other than "statutory" in form, land has been conveyed by words sufficient and adequate at the common law to transfer a fee, a conditional limitation over to third parties cannot be made in the same deed upon any contingency which may be named. This is the real propo-

sition in issue in this case. The words "statutory in form" are used in the foregoing statement by the appellant as meaning in conformity with the statute, which declares that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." It is conceded, as it must be under our decisions, that by a deed in such form conveying a fee though not containing words of inheritance a fee may be limited to take effect upon the happening of a condition which by the terms of the deed displaces the first fee and substitutes another in its place. It was so decided in *Riggin* v. *Love, supra, Welch* v. *Welch, supra, Cutler* v. *Garber, supra, Stoller* v. *Doyle, supra,* and *Roberts* v. *Dazey,* 284 Ill. 241, which were all cases of deeds not containing words of inheritance.

While admitting this to be the law applicable to deeds which do not contain words of inheritance and yet by virtue of the statutes of this State convey estates in fee, it is contended that in deeds which do contain words of inheritance, and which therefore do not need the aid of any statutory rule to convey a fee, a fee cannot be limited to take effect upon a condition and displace the first estate in fee. Since none of the cases last cited contain words of inheritance they may all be eliminated in the consideration of this question.

The appellant concedes, also, that a fee may be limited in a will after a preceding fee by executory devise,—a proposition which, though not involved in this case, cannot be disputed. The truth of this proposition indicates that there is no reason, in the nature of the thing itself or of the law, which prohibits the limitation of a fee after a fee. Neither is there any reason in the character of the transaction why this may not be done in a deed as well as a will,

and it is expressly conceded that it may be done by the use of a deed of conveyance in which words of inheritance do not occur. The reason for the supposed distinction between deeds containing words of inheritance on the one hand, and deeds not containing words of inheritance and wills on the other hand, is wholly artificial and technical and has its origin in the early methods of transferring title to real estate in England, which never prevailed on this side of the Atlantic and were never applicable to conditions in this country.

The earliest mode of conveyance of land known to the common law was by the mere delivery of possession, called livery of seizin or feoffment. No deed or writing of any kind was necessary, the livery of seizin alone being sufficient and the ceremony being performed in the presence of witnesses,—the peers and freeholders of the neighborhood,—who might afterward be called on to testify to the fact. The feoffee, where no estate was expressed, had barely an estate for life, for the inducement to the feoffment being the personal ability of the feoffee to render the services due the lord, his estate should subsist for his life, only, unless the feoffor by express provision in the creation and constitution of the estate gave it a longer continuance. This was for ages, Blackstone says, the only conveyance whereby our ancestors were wont to create an estate in fee simple by giving the land to the feoffee to hold to him and his heirs forever. Since the mere delivery of possession, depending on the ocular testimony and remembrance of witnesses, was liable to be forgotten or misrepresented and to become incapable of proof, a charter of feoffment which declared the limitation of the estate vested in the feoffee became the usual accompaniment of the livery, though no writing was necessary before the Statute of Frauds. (29 Car. 2.) The charter of feoffment did not convey the land, and its only purpose was to preserve the evidence of the transaction as well as the terms and service upon which the feoffee was to hold the estate vested by the feoffment. It

was authenticated by the seal of the feoffor and attested by some of the *pares* or freeholders. An example of an ancient charter of feoffment appears as appendix No. 1 to 2 Blackstone's Commentaries, and is a short and plain but full and complete document, having indorsed on it the livery of seizin in the presence of witnesses. (2 Blackstone's Com. 309, 316; 4 Kent's Com. 480; 2 Tiffany on Real Prop. sec. 427, p. 1566.)

At common law there could not be a limitation of a fee after a fee, or the creation of a fee in one person with a provision that upon a certain event the fee should shift from that person to another, for the reason that the fee created in the feoffee could be defeated only by the feoffor's taking advantage of the breach of some condition and making an entry, thus regaining the seizin in himself, otherwise the giving effect to the provision that the fee should go over from the first tenant in fee would involve a transfer of the seizin without the required ceremony of actual livery of seizin. (2 Washburn on Real Prop.—6th ed.—579, sec. 1634; 1 Tiffany on Real Prop. sec. 157, p. 548.) The feoffment was in use in England as a means of transferring a fee until 1845, when it was enacted by statute that freehold land might be conveyed simply by way of deed, without livery of seizin or lease and release, and that feoffments should not have any tortious operation.

The rule that a fee could not be limited upon a fee had its foundation in the necessity of livery of seizin to the transfer of a fee. The feudal law recognized no ownership of land except seizin and possession by a tenant bound to the performance of feudal services. The courts of law did not recognize any trust or confidence to hold for the benefit of any other person. The only protection, in the beginning, of one for whose use another had been enfeoffed of land was the good faith of the feoffee to uses, but in the latter part of the fourteenth century appeals to chancery were recognized, and by the middle of the fifteenth

century the jurisdiction of the chancellor to enforce the terms of a use against a feoffee who failed to observe them was fully established. While at common law, owing to the requirement of livery of seizin, a freehold could not be limited to commence in the future, this rule had no application to the declaring of uses, which did not require livery of seizin, and they could be created to spring up in the future or to shift from one person to another at a future time or on the happening of a future event, and a use might be created after a limitation in fee. (1 Tiffany on Real Prop. sec. 96, p. 343; 4 Kent's Com. 293.) In 1535 the statute of 27 Henry VIII, chap. 10, known as the Statute of Uses, was enacted, which declared that where any person should stand seized of any lands, etc., to the use, confidence or trust of any other person or persons, the persons having the use, confidence or trust should be seized and deemed to be in full seizin and possession of such lands, etc., in such like estates as they had in the use, and that the title and possession of the persons so seized to uses should be deemed to be in the persons having the use, confidence and trust. Section 3 of chapter 30 of our statutes, which was first enacted in 1827, (Laws of 1827, p. 95,) is the same in substance. Since uses were by this statute converted into legal estates they were afterward recognized by the courts of law, and the rules were applied to them which had been developed by the court of chancery. Deeds of bargain and sale and covenants to stand seized to use were instruments by means of which, under the Statute of Uses, the ownership of land could be transferred without livery of seizin and a fee limited upon a fee by way of use. While these deeds had, of themselves, no effect upon the ownership of land at common law for want of livery of seizin, they became effective as conveyances of the freehold under the statute. Springing uses and powers, shifting uses and estates of freehold to commence in the future, were all foreign to the notions of the common law and could not

be limited upon common law fees but were let in by construction by the judges themselves, upon uses after they had become legal estates. (2 Washburn on Real Prop.—6th ed.—392, sec. 1368; *Hopkins* v. *Hopkins,* 1 Atk. 591; *Roe* v. *Tranmarr,* Willes, 682; 1 Cruise's Dig. 363; Sugden's Gilbert on Uses, 163; Cornish on Uses, 44; 2 Smith's Lead. Cas.—5th Am. ed.—451.) The operation of the conveyance by bargain and sale was in this manner: The bargain for the sale of the land by the owner for a valuable consideration had no effect upon the legal title but the payment of the consideration raised a use in favor of the purchaser, and the bargainer thereby standing seized to the use of the purchaser, the statute executed the use, so that the purchaser became seized of the legal estate in the same manner as he had been seized of the use and as completely as if he had been invested with it by livery of seizin. The same result followed from the covenant to stand seized where the owner of land, in consideration of relationship by blood or marriage, covenanted to stand seized of the land to the use of the person so related, either immediately or in future. A use was raised by the covenant, which the statute executed at the time stated out of the covenantor's seizin, so that the *cestui que use* became seized of the legal estate. A bargain and sale requires a valuable consideration; a covenant to stand seized, one of blood or marriage. Both are found in the deed in question, and if necessary to effect the intention it may be construed either as a bargain and sale or a covenant to stand seized. (2 Smith's Lead. Cas. *supra.*)

It has been stated frequently by this court that a fee cannot be limited after a fee by deed, but it has been decided in only one case. (*Palmer* v. *Cook,* 159 Ill. 300.) The deed construed in that case was in the form authorized by section 9 of the act concerning conveyances and did not contain the word "heirs," and section 13 of the act was overlooked. The case has not been followed, and in *Cover* v. *James, supra,* the fact that section 13 had been overlooked

was noted. In *Bauman* v. *Stoller,* 235 Ill. 480, *Palmer* v. *Cook* was held in conflict with *Cover* v. *James* and it was held that it should not be followed. So it was held also in *Morton* v. *Babb, supra,* and *Buck* v. *Garber, supra.* It was even held in *Ewing* v. *Barnes,* 156 Ill. 61, and *Silva* v. *Hopkinson,* 158 id. 386, contrary to the uniform decisions of the court both before and since, that a fee could not be limited on a fee in a will by way of executory devise, but the decisions were overruled on this question within a few months by *Glover* v. *Condell,* 163 Ill. 566.

Except *Palmer* v. *Cook, supra,* which has been overruled, there has been no adjudication by this court that a fee can not be limited by deed upon a fee. Generally, the cases in which that dictum has occurred have been cases involving the construction of wills, in which the dictum was in no way necessary, the question was not involved and could not possibly have been decided. In *Ackless* v. *Seekright,* Breese, 76, which was an action of ejectment brought against an executory devisee whose estate depended upon the construction of the will, it was said: "There is no doctrine better settled than that a fee may be limited after a fee, and this happens, says Justice Blackstone in his second vol. Com., p. 172, 'when a devisor devises his whole estate in fee but limits a remainder thereon to commence on a future contingency, as if a man devises land to A and his heirs but if he dies before the age of twenty-one then to B and his heirs, his remainder, though void in a deed, is good by way of executory devise.' " This case has been cited many times in the opinions of this court and this language of Blackstone quoted, sometimes following a statement, in substance, that a fee cannot be limited upon a fee by deed but may by an executory devise. It happens that in none of those cases but one, to be mentioned hereafter, has the limitation in question been contained in a deed. The reference in the opinions accompanies the bare statement mentioned, with no consideration of the question and

without discussion. Such statements in an opinion are *obiter dicta,* not entitled to any weight in considering the question except as they are sustained by reason or authority, and the authority which merely sustains the proposition that the limitation is valid in a will cannot be regarded as sustaining the proposition that it is not good in a deed.

Among the decisions of this court cited by the appellant in support of the proposition that a limitation over of a fee after a fee cannot be made in a deed are *Siegwald* v. *Siegwald,* 37 Ill. 430, *Smith* v. *Kimbell,* 153 id. 368, *Glover* v. *Condell, supra,* and *Johnson* v. *Buck,* 220 Ill. 226, which are all cases of executory devises. Many others might be added to them. *McCampbell* v. *Mason,* 151 Ill. 500, is a case of a deed in which it is said in argument that a fee cannot be limited after a fee in a deed but may be in a will by executory devise. There was no discussion or decision of the question and the case was decided on other grounds, the court holding the estates in question to be contingent remainders. In *Wilson* v. *Wilson,* 268 Ill. 270, the deed prohibited the transfer of the land by the first taker, the attempted limitation over was upon the death of the first taker intestate and without children, and it was held void, not because a fee could not be limited on a fee by deed, but because the first taker, by reason of his estate, had an absolute power of disposition of the land by will, and there can be no valid executory limitation after a fee when the first taker has the absolute right to dispose of the property. (*Wolfer* v. *Hemmer, supra.*) There was a similar decision in the similar case of *Stewart* v. *Stewart,* 186 Ill. 60, in which it was held that neither in a will nor a deed could successive conveyances in fee be sustained where each owner in fee was authorized to dispose absolutely of the whole property, thus enabling him to destroy the estates subsequently limited. It was not held in those cases that the mere devise of a fee with a limitation over upon condition was ineffective as to the limitation because the de-

309—36

vise of the fee carried with it the right of alienation of the estate, which was inconsistent with the limitation, for it is well settled that a devise to one and his heirs forever, but in case he should die without children or heirs of his body then over, is a valid devise of a fee determinable upon the death of the devisee without leaving children living. (*Summers* v. *Smith,* 127 Ill. 645; *Strain* v. *Sweeny,* 163 id. 603.) What was decided was, that in such a devise the subsequent limitation is void where the will shows that the testator's clear intention was that the owner of the first estate in fee should not in disposing of the property be limited to the alienation of his fee defeasible upon condition but might convey the entire ownership of the property. *Howard* v. *Carusi,* 109 U. S. 725; *Williams* v. *Elliott,* 246 Ill. 548; 2 Redfield on Wills,—2d ed.—277; 4 Kent's Com. 270; 1 Tiffany on Real Prop. sec. 167, p. 568.

When Blackstone's lectures were delivered and began to be published, about 1765, the usual mode of transferring a fee had been for two hundred years or more by lease and release, which consisted first of a lease by bargain and sale for a year, which did not have to be enrolled because the estate was not a freehold, followed by a release, which was a common law grant of the reversion and was not dependent for its operation on the Statute of Uses. It was to a deed of this kind and not to a deed taking effect under the Statute of Uses that Blackstone referred when he said: "If a man devises land to A and his heirs but if he dies before the age of twenty-one then to B and his heirs, this remainder, though void in a deed, is good by way of executory devise." It is clear that this is so, for he says in the same volume of his Commentaries, on page 334: "A fee may be limited to take effect after a fee, because, though that was forbidden by the common law in favor of the lord's escheat, yet when the legal estate was not extended beyond one fee simple, such subsequent uses (after a use in fee) were before the statute permitted to be limited in

equity, and then the statute executed the legal estate in the same manner as the use before subsisted. It was also held that a use, though executed, may change from one to another by circumstances *ex post facto,* as if A makes a feoffment to the use of his intended wife and her eldest son for their lives, upon the marriage the wife takes the whole use in severalty, and upon the birth of a son the use is executed jointly in them both." In a note is a reference to Sugden's Gilbert on Uses, which refers to shifting or secondary uses, which take effect in derogation of some other estate and are either limited expressly by the deed or are authorized to be created by some person named in the deed, and says that "these shifting or secondary uses are at this day so common that they pass without observation. In every marriage settlement the first use is to the owner in fee until marriage and after the marriage to other uses."

That an estate may be thus created to arise upon some contingency in this State under the Statute of Uses by deed was held in *Shackelton* v. *Sebree,* 86 Ill. 616, where it was said: "Our statute has abolished livery of seizin and deeds of feoffment have gone out of use and lands are conveyed by deed of bargain and sale, and under the Statute of Uses the use is executed and the title passes to the grantee on the delivery of the deed." In *Abbott* v. *Abbott,* 189 Ill. 488, though the question was not involved in the case, it was argued by counsel and the proposition was approved by the court, "that where the fee in the first taker created by a deed is made determinable, as upon the happening of a valid condition subsequent, followed by a limitation over of the fee or use to another upon the happening of the prescribed event, the fee or use shifts from the first to the second taker, whereby the deed is a conveyance under the Statute of Uses, as all our American deeds are, and is a clear case of shifting use." In *Stoller* v. *Doyle, supra,* the statement just quoted is mentioned, and it is held that the limitation in a deed of a future interest taking effect in

derogation of the estate of the grantee conveyed by the granting clause of the deed "could not be created by a deed at common law, but a deed of bargain and sale, such as the deed in this case, takes effect under the Statute of Uses and such a limitation is valid." In *Duffield* v. *Duffield,* 268 Ill. 29, the last two cases are cited to the point that the power to limit a future estate by deed has been recognized in this State, though the question was not involved in that case. *Kron* v. *Kron,* 195 Ill. 181, was a case of attempted limitation by deed of a fee after a fee granted, and is the only case of that kind in which *Ackless* v. *Seekright, supra,* is cited to the proposition that a grantor cannot pass title in succession to different persons in fee simple by deed. The grant in that case was to Peter Scheidel and Henrietta Scheidel, husband and wife, and their heirs and assigns forever, followed by the clause that should they own the land after the decease of each of them it should descend in equal parts to the children of Peter and Henrietta Scheidel and the children of Henrietta Scheidel by her first husband, naming them. The case was undoubtedly decided right in accordance with the decision in *Wolfer* v. *Hemmer, supra,* that a gift over in case of intestacy is not a valid conditional limitation.

This cause was submitted on the single question whether the limitation of a fee on a fee by deed is valid in this State. No other question was argued and a judgment was rendered affirming the decree of the circuit court. Subsequently, upon the petition of the appellant in accordance with the rules a rehearing was granted. We have reconsidered the case upon the original briefs as well as those filed on the rehearing, and, as indicated by what has been said in this opinion, we have reached the same conclusion on the question argued as in the former opinion, but in their closing argument on the rehearing appellant's counsel for the first time argue that the contingency mentioned in the deed of the death of the appellant without a descend-

ant refers to death in the lifetime of the grantor; that the grantor having died and the appellant still living, the contingent event has become impossible and the estate of the appellant has become indefeasible. A new point raised in a reply brief will ordinarily be given no attention. This point, however, is not a mere error of procedure or one arising on the hearing or connected merely with the conduct of the case, but is a fundamental principle of construction of the law of estates and conveyances of such a character as, if sustained, to finally determine the rights of the parties in the case on the merits. We would not, with full knowledge of the error, render judgment taking from the lawful owner his property and giving it to others who have no right to it, when the lawful rights of the parties are presented to us and relied upon at any time before judgment, though the parties may have been remiss in not presenting the case fully at an earlier time. Therefore, after the case was taken under advisement upon rehearing, the appellees, who had had no opportunity to meet the argument of the appellant on the new point raised in her closing argument, were directed to file a brief on that point. They have done so, and the point will be considered.

The deed reserved a life estate to the grantor and granted to the appellant in fee simple a remainder which was vested in interest at the delivery of the deed but was to come into possession only at the termination of the life estate and was defeasible upon the appellant's death without a living descendant, and in that event the property was to go by shifting use to the appellees. To determine whether this gift over will take effect or not it is necessary to ascertain to what time the limitation refers the death which is made the condition of the limitation, and the rules for the determination of that question are well settled. In a devise to A, and if he should die without any further condition expressed, to another, the reference is to death in the testator's lifetime; but if the devise is to A, and if

he should die under conditions which may happen or not, such as without issue, the reference is to death at any time, whether before or after that of the testator. (*Fifer* v. *Allen,* 228 Ill. 507; *Ahlfield* v. *Curtis,* 229 id. 139.) These were devises of a present interest, to take effect in possession immediately upon the death of the testator, without any intervening estate. The rule in the case of devises of a future interest to take effect in possession upon the termination of an intervening particular estate is stated in *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, as follows: "If a particular estate precedes a gift over, the latter will usually take effect if the contingency happens at any time during the period of the particular estate. In such a case death without issue means death before the death of the life tenant, unless the will shows that the testator intended to refer to a later date than the termination of the life estate." This rule was approved and followed in *Sheley* v. *Sheley,* 272 Ill. 95, and *Welch* v. *Crowe,* 278 id. 244, and the same conclusion was again announced in *Fulwiler* v. *McClun,* 285 Ill. 174, after a consideration of all the decisions which have been cited. The latest application of the rule in this court was in *Risser* v. *Ayers,* 306 Ill. 293. The question usually arises in the construction of wills, because executory devises are more common than executory limitations in deeds. All the cases which have been cited are cases of wills, but in *Ames* v. *Smith,* 284 Ill. 63, the limitation was contained in a deed reserving a life estate to the grantor, conveying the remainder in fee simple to the grantor's sons, with an alternative gift over in case of the death of either of the sons without a child or wife surviving him, or leaving a wife or child surviving, or a wife and child or children. The grantor having died and the sons survived, the rule in regard to the gift over of a future interest to take effect upon the termination of a particular estate announced in *Lachenmyer* v. *Gehlbach, supra,* was quoted and followed and the sons were held to be vested with the title in fee simple.

The deed in that case did not contain words necessary at common law to create an estate of inheritance, as does the deed in the present case, and the gifts over were upon contingencies which exhausted all the possibilities as they were in the *Lachenmyer case,* and the same rule was applied in both cases. The same rule requires the same conclusion here.

In their brief on this question the appellees argue that the deed conveyed a fee to Fay A. Barney subject only to the gift over in case of her death without a living descendant; that the reservation of the life estate appears after the granting clause, and cannot affect the prior grant and limitation because repugnant to the language of the grant. Referring to the language used in the statement of the rule in *Lachenmyer* v. *Gehlbach, supra,* "if a particular estate precedes a gift over, the latter will usually take effect if the contingency happens at any time during the period of the particular estate," they contend that these words mean that the rule applies if the language creating the particular estate precedes the gift over. In this they are in error, for the language refers to the precedence in time of enjoyment of the particular estate over the subsequent estate, which is the subject of the gift over, and not to the precedence of place in the deed of the language creating the particular estate over. The precedence referred to is that of the estates and not of the language creating them. The words reserving the life estate are subsequent to those granting the fee, but so, also, are the words creating the conditional limitation, and the latter words are a part of the same proviso as the words reserving the life estate. All are contained in a single sentence and all are a part of the granting clause or premises of the deed. The appellees' argument in regard to the reservation is the same as appellant's in regard to the limitation. If the proviso does not restrain the absolute fee by reserving a life estate, neither does it impose the limitation on the fee.

It is said that in this case the rule in question, which was formulated to aid in the construction of wills, is sought to be applied to a deed. As has been said already, the necessity for construction of the language in question arises more frequently in cases of wills, but the rule is as applicable to the comparatively few cases involving a deed as to those of wills. It was applied in *Ames* v. *Smith, supra,* to a deed, and its application in the case of a deed was recognized in *Cutler* v. *Garber, supra,* though that case was held to be excluded from its operation by the language of the deed there involved, which clearly referred the contingency to a time later than the expiration of the particular estate.

The rule in question is merely a rule of construction and yields readily to any indication in the instrument showing the intention of its maker to refer the death to a time later than the end of the life estate. It is contended that the deed shows the actual intention of the grantor to refer to the death of the grantee at any time. The first indication of such intention which is suggested is the difference in age of the grantor and the grantee, which is said to be such that the death of the grantee without issue in the grantor's lifetime is so improbable as to show an actual intention that the condition was to be effective after the grantor's death as well as before. The age of neither the grantor nor the grantee appears in the deed or can be ascertained except by extrinsic evidence, but counsel assume that the grantor was over eighty years old at the time of making the deed because he received a deed to a part of the land in 1847. The grantee was his unmarried grand-daughter, and therefore it is assumed that the grantor could not reasonably have had in contemplation the marriage of his grand-daughter, the birth of children and of grandchildren in his own lifetime. There is no evidence of the age of the grantee, but neither the grantor's age of eighty years nor the impossibility of grandchildren of the grantee in his lifetime can be assumed from the record. In *Beaty* v. *Calliss,* 294 Ill. 424, the con-

tingency of death leaving "her surviving no child or descendants of such" was held to refer to death at any time, because the only date to which the words of the will must otherwise have referred was the time when the devisee would become twenty-one years of age. As she could not have descendants of a child at that age, it was held that the testator, having in mind death without child or descendant of a child, must have had in contemplation death at a time when the decedent could have left a descendant of a child surviving her, and therefore the words should be given their unqualified natural meaning of death at any time with no surviving child or descendant. In this case there was no such condition of impossibility. Marriage of the grantee and the birth of a child in the grantor's lifetime were not improbable. The birth of a grandchild in the grantor's lifetime, while not so probable, was not at all impossible or so unlikely to occur as to justify the disregard of an established rule of construction for the alleged reason that its occurrence could not have been contemplated by the grantor. Conceding that the facts assumed by the appellees are shown by the evidence, they do not justify the conclusion as to the grantor's intention. In *Beaty* v. *Calliss, supra,* the fact of the minority of the devisee appeared on the face of the will, and in view of the impossibility of the birth of a grandchild of the devisee before she became twenty-one years of age, it was held that the limitation of the gift over upon the happening of the contingency before that time was not within the contemplation of the testator. Parol evidence of extrinsic facts was not admitted in that case to aid in the construction of the will. Whether it is competent in this case it is unnecessary to decide. The rule is that the nature and extent of the estates granted by a deed are to be determined as a matter of law from the instrument itself, and it is not permitted to go beyond the four corners of the deed to ascertain the intention. Parol evidence may be received to apply the deed to the subject matter, but not to

change its legal effect or to show extrinsic circumstances to exempt the deed from an established rule of construction. Where there is no ambiguity in the language of a deed which has a well settled legal meaning, evidence is not admissible to explain or add to the language used by proof of extraneous circumstances. (*Morton* v. *Babb, supra.*) The same license permitted in the construction of wills is not permitted in construing deeds. *Duffield* v. *Duffield,* 293 Ill. 300.

The gift over in the event of the death of Fay A. Barney without a living descendant was to the living grandchildren of John Hull, and it is argued that by this provision the grantor indicated that he referred to the time of his grand-daughter's death whenever it might occur. It does provide that the grandchildren to take in case of her death without a descendant are to be ascertained at that time, but it throws no light on the question whether the time of death referred to is in the grantor's lifetime or after his death. These words afford no reason for the rejection of the well recognized rule that if a particular estate precedes a gift over, death without issue means death before the death of the life tenant unless the instrument shows that the maker intended to refer to a later date.

The use of the words, "said land and premises shall revert to and the title vest in" the grandchildren, is claimed to show that the time of death contemplated was after as well as before the death of John Hull, for the reason that the land could not revert unless the title had vested in the grantee. The argument assumes that the title could not vest in Fay A. Barney until the death of John Hull, and the cases cited in support of it are cases of wills in which the title does vest at the death of the testator. The title of the grantee in this deed vested upon its delivery, and the expression "revert" is as applicable in case of her death occurring in the lifetime of the grantor as after his death.

As the case was first submitted a consideration of the question then presented became necessary, and upon the rehearing a reconsideration as well of that question seemed desirable as of the further question arising on the closing argument. The justification of the length of this opinion is found in the existence of the dicta in numerous cases, some, only, of which have been cited, that a fee can be limited on a fee only by executory devise and not by deed, and in the existence of dicta and decisions to the contrary. This dubious situation seems to require consideration and an explicit, even if tedious, exposition of the view of the court. Our conclusion is that the deed in question, by the granting clause contained in the premises, created in the appellant an estate in fee simple defeasible upon a condition and a subsequent estate in fee simple which upon the happening of the condition would displace the first; that the *habendum* clause does not and cannot destroy the second estate, and that a fee may be limited on a fee not only in a will by executory devise but by shifting use in a deed in any form, which may take effect by virtue of the Statute of Uses whether the deed contain words formerly necessary to transfer an estate of inheritance or convey such estate by virtue of section 13 of the act concerning conveyances; that the death of the appellant, to which the condition referred, meant death during the continuance of the life estate reserved to the grantor, and the appellant having survived the grantor the condition has become impossible and the appellant's estate indefeasible.

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree finding the appellant seized of an estate in fee simple absolute.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTWRIGHT, dissenting:

If the law of this State as declared in its early history in *Ackless* v. *Seekright,* Breese, 76, and uniformly repeated

many times by this court, should determine the rights of these parties, it would be decided that the deed conveyed to the grantee a remainder in fee simple after the life estate reserved to the grantor; that every remainder necessarily awaits the determination of the preceding estate, and as the fee simple in the grantee would never come to an end, an attempted limitation thereafter upon a specified contingency was void. Upon that question the history of transfers of title in England, while interesting, is of little practical importance. It is true that before the Statute of Frauds and Perjuries no writing was essential to the transfer of the title to land, and it is equally true that after the Statute of Uses an executory interest could be created by a deed either declaring a use or acknowledging the payment of a valuable consideration. In declaring the law of this State the court necessarily referred to the method in use for transferring title to real estate by deed and not under the Statute of Uses. While an instrument of writing was not required before the Statute of Frauds and Perjuries, the use of deeds for that purpose was as old as the common law. Whether Blackstone was writing about such conveyances or the transfer of title by lease and release seems to me of no importance in determining what was meant by this court. The lease and release was adopted to avoid certain formalities, the lease being operative under the Statute of Uses and the release completing the title. This court made no distinction, but, stating the law applicable to our method of conveyancing, established the rule that a fee could not be limited after a fee by deed. Assuming that the court might very properly have held that our deeds were operative under the Statute of Uses, that was not done. The matter, from the first declaration by this court, has been within the full and absolute control of the General Assembly, which has made one important change noted in this case and recognized by this court. While the question has not generally been involved so as to bring it within the

rule of *stare decisis,* the statement was not *obiter dicta* in the sense that it was unrelated matter, but .was the statement of a rule with an exception of an executory devise. There are doubtless cases where the title has passed beyond the grantee in the deed containing the attempted limitation, and the law having been frequently declared by this court with the tacit approval of the General Assembly, it seems to me that it should not now be disturbed by the- court.

Mr. JUSTICE THOMPSON, also dissenting:

The fee granted to appellant by the deed set out in the opinion of the court is debased by the proviso, which reads: "If the said Fay A. Barney shall die without living child or children or descendants of child or children, then said lands and premises shall revert and go to and the title vest in the living grandchildren of said John Hull, Sr., said grantor also reserving the use, occupation, rents and profits of said land during his natural life." I agree fully with the first proposition decided by the court,—that is, that the executory limitation vesting the fee in the surviving grandchildren of the grantor in the event the fee vested in the grantee is terminated by the happening of the contingency stated, is valid. The same reasons that justify the limitation of a fee upon a fee by an executory devise, (*Glover* v. *Condell,* 163 Ill. 566; *Johnson* v. *Buck,* 220 id. 226;) and that sustain the validity of a grant by a deed of a fee to commence *in futuro,* (*Shackelton* v. *Sebree,* 86 Ill. 616; *Bullard* v. *Suedmeier,* 291 id. 400;) compel the court to hold, if uniformity is to control, that shifting future interests created by deed are valid. There has never been basis, in reason or law, for holding that a fee could not be limited upon a fee by deed operating under the Statute of Uses.

It is upon the second proposition decided that I find myself in disagreement with my brethren. In construing the grantor's deed, words used by him ought to be given their ordinary meaning and his intention ought to be gathered

from the language used. By his deed he conveys the fee to his grand-daughter and then provides for the shifting of the fee upon the happening of a certain contingency. As the fee is to shift if the grantee die without leaving descendants, the question is, To what time does death refer? Death in the lifetime of the grantor or death at any time? If it were not for the reservation of the life estate by the grantor the question would be a simple one. It is uniformly held that where there is a grant of a fee to A with a gift over to B in the event of the death of A without issue, A takes a base fee, and the fee shifts to B if A die at any time without issue. It is only where a life estate precedes the gift of the fee that difficulty of construction arises. In some States in this country it has been said that where this latter situation exists the shift of the fee will take effect only if the contingency happens during the continuance of the life estate. This rule was first recognized by this court in *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, but it was not said in that case that the rule was well established. It was said that under such circumstances death without issue *usually* meant death before the death of the life tenant unless the will showed that the testator intended to refer to a later date than the termination of the life estate. This is an artificial, arbitrary rule of construction, and certainly should not be applied where the language of the instrument being construed indicates that the maker of the instrument referred to death at any time, either before or after the termination of the particular estate. The object to be obtained in construing an instrument is to give it the interpretation and meaning which the maker intended, and his expressed intention must be carried out whenever it can be done without violating some established rule of law or public policy. All artificial rules of construction yield to the intention of the maker plainly expressed. It seems to me that the court is making the wrong application of this artificial rule of construction. I think that an effort should be

made to ascertain the intention of the maker of the instrument by a consideration of the language used by him, without reference to any artificial rule. If the language used by him does not clearly express his intention then resort can be had to artificial rules to determine his intention.

In England (*O'Mahoney* v. *Burdette,* L. R. 7 Eng. & Ir. App. Cas. 388,) it is held that the fact that the grant of the fee is preceded by a life estate makes no difference, and that the gift over on the event of the death of the grantee without leaving descendants takes effect whenever death without issue occurs, whether before or after the death of the life tenant. I think this view is supported by sound reasoning and by authority. (Kales on Future Interests,—2d ed.—secs. 166, 533.) The identical provisions of this deed appearing in a will would have brought the case squarely under the first rule stated, for there would have been a devise in fee to the grantor's grand-daughter with a gift over to his other grandchildren in the event of her death without descendants, which would have meant death at any time. After making exactly the same provisions in the deed the grantor reserved to himself a life estate. This subsequent reservation does not render the meaning of the deed ambiguous, and there seems to me to be no reason for giving the deed a different construction than if the reservation were not added. If it were not for the artificial, arbitrary rule of construction which has been applied by the court I do not think anyone would entertain any doubt that the true interpretation of this deed would be that death without living descendants means death at any time, whether before or after the death of the life tenant. Furthermore, the context of this deed supports the natural meaning of the words. The direction that if the first grantee should die without living descendants the land is to "revert and go to and the title vest in" the grantor's living grandchildren appears to indicate that the gift was to come back or come away from the first grantee after she had the possession

and enjoyment of it, rather than to imply that the only state of circumstances under which the "living grandchildren of said John Hull, Sr.," could take, would be a state of circumstances under which the first grantee would have had no enjoyment of the gift at all. In other words, the benefit intended for the "living grandchildren" appears to me to be introduced through the medium of an executory limitation over after enjoyment by a previous taker, and not as an alternative gift, to take effect, if at all, before the period of enjoyment commences. If the rule of construction applied by the court is to govern, it is not possible for both the appellant and the other grandchildren of the grantor to have enjoyed the gift. · Under the construction placed on this deed by the court the title must vest, at the time of the grantor's death, in the appellant or in the other living grandchildren, and it is not possible for the lands to pass from appellant to the other grandchildren. The event on which the gift is to go over is a contingent—not a certain—event. The gift is not to go over on the death of the first grantee, but only in case of her death without living descendants. To say that that event—her death with-' out living descendants—must occur before the death of the grantor, who reserved to himself a life estate, is to import a meaning and to add words to the deed. The only excuse ever given for the rule of construction applied by the court is that the courts desired to avoid a construction that would suspend the absolute vesting of the gift during the whole lifetime of the grantee, but I do not understand that that desire of the courts, however laudable it might be, is to be exercised to change the natural meaning of the terms of a gift. There is but one time when it can be ascertained whether the first grantee will die without living descendants, and that is the time of her death. To say that the grantor meant any other time is to write into his deed language that he did not put there.