**RICHMAN et al. v. HOPPIN et al.**

No. 4349.

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1930.

Rehearing Denied Feb. 5, 1931.

Thomas W. Hoopes and Leslie G. Pefferle, both of Springfield, Ill., and E. F. Richman, of Muscatine, Iowa, for appellants.

Logan Hay, R. Allan Stephens, and Walter M. Provine, U. S. Dist. Atty., all of Springfield, Ill., and Everett Sanders, Rob-

738

ert W. Childs, Dwight S. Bobb, James B. Wescott, and William A. Bradford, all of Chicago, Ill. (Paul W. Gordon and Leigh M. Kagy, both of Springfield, Ill., of counsel), for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellants brought this action for partition of real estate and to quiet title thereto. They claim title by virtue of a deed made on August 27, 1862, by Franklin Fassitt and his wife in consideration of $500 paid by Charles T. Hoppin, Sarah Louisa Hoppin, Mary Eliza Hoppin, and Charles Hoppin, the three last named being the children of Eliza Hoppin, deceased, former wife of said Charles T. Hoppin. The granting clause is as follows: "Grant, bargain and sell unto the said Charles T. Hoppin for and during his natural life and at his death to the said Sarah Louisa Hoppin, Mary Eliza Hoppin, and Charles Hoppin, and in case of the death of either of the said last named three persons without issue then to the survivors or survivor of said three, their heirs or assigns."

Mary Eliza Hoppin died in 1870 without having issue born to her; Charles T. Hoppin died in 1907. After the deaths of Mary Eliza Hoppin and Charles T. Hoppin, Sarah Louisa Hoppin executed valid deeds conveying to certain of the appellees, or their predecessors in title, all her interest in the real estate involved in this appeal. Sarah Louisa Hoppin intermarried with one Richman in 1865, and died December 30, 1920, leaving appellants as her only children. She left no other children or descendants of children, nor were other children ever born to her; Charles Hoppin is still living, has never been married, and has never had any children, and is past seventy-five years of age.

Some of the appellees are immediate or remote grantees of Charles and Sarah Louisa, and others are judgment creditors of Charles; some are mortgagees of Charles and Sarah Louisa, and of their immediate or remote grantees. On motion of appellees the action was dismissed for want of equity.

Appellants have assigned many errors, but they all present the same question: Did the court construe the deed of Franklin Fassitt correctly?

The trial court held that the deed gave to Charles T. Hoppin a life estate in the land, and to Sarah Louisa, Mary Eliza, and Charles Hoppin a vested remainder in fee, subject to the life estate of Charles T., and also subject to the conditional limitation of being divested in case of the death of any one of the three named children without issue during the lifetime of Charles T. Hoppin, in which event the survivor or survivors of the one dying without issue would take the one-third interest of that one; that upon the death of Charles T. Hoppin any of the remaindermen named in the deed who survived him took a fee simple absolute, and the gift over became impossible of taking effect. As a result of this construction the court held that upon the death of Mary Eliza in 1870 without issue her third in fee was divested, and shifted to and vested in Charles Hoppin and Sarah Louisa Hoppin; that upon the death of Charles T. in 1907 a fee simple absolute to all the land vested in Sarah Louisa and Charles; that Charles and the immediate and remote grantees of Sarah Louisa and Charles now hold the fee-simple title thereto, and that appellants have no interest therein.

Appellants contend that the deed created an estate in fee tail, at common law, in Sarah Louisa, Mary Eliza, and Charles Hoppin, and that under paragraph 6, chapter 30, Illinois Statutes (Cahill's Rev. St. 1929), they took life estates, subject to the life estate of Charles T., and that their children took the fee simple.

Paragraph 6, chapter 30, Illinois Statutes (Cahill's Rev. St.) is as follows: "In cases where, by the common law, any person or persons might hereafter become seized, in fee tail, of any lands, * * * by virtue of any devise, gift, grant or other conveyance, hereafter to be made, or by any other means whatsoever, such person or persons, instead of being or becoming seized thereof in fee tail, shall be deemed and adjudged to be, and become seized thereof, for his or her natural life only, and the remainder shall pass in fee-simple absolute, to the person or persons to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass, according to the course of the common law, by virtue of such devise, gift, grant or conveyance."

Unless the title conveyed to the three children of Charles T. Hoppin be a fee tail, the statute just quoted can have no application. An estate tail at common law is an estate of inheritance, which, instead of descending to heirs generally, descends to the heirs of the donee's body, or some class of

---

such heirs, and through them to like heirs in a direct line in a regular order and course of descent so long as such heirs exist, and upon the extinction of the specific issue the estate is determined or ended. Kohner v. Miles, 270 Ill. 20, 110 N. E. 407.

In a grant to A with a limitation over to his heirs, the word "heirs" in its legal sense is interpreted to mean heirs generally, and when it is so interpreted the estate conveyed cannot be a fee tail. In order to create a fee tail words of procreation sufficient to restrain the general import of the word "heirs" are necessary, and to accomplish this result the most used phrase has been "heirs of his, or her, body." Thus a deed to A with limitation over to the heirs of his body would create a fee tail, because the limitation is to a certain class of A's heirs and not to his general heirs; but a grant to A with limitation over to his heirs would, in its legal sense, not be a fee tail, because the limitation is to his general heirs and not to a certain class.

It is not necessary, however, for these specific words to be used in order to create a fee tail. Any words may be used for that purpose which manifest such intention on the part of the grantor. Stearns v. Curry, 306 Ill. 94, 137 N. E. 471. In fact, the word "heirs" standing alone has been construed to mean "heirs of the body," or to mean "children," if the context of the instrument manifested a clear intention on the part of the parties to use it in that sense; but in no other instance have the courts construed the word "heirs" to mean other than general heirs. In the construction of deeds the pole star which guides the court is the intention of the parties, if that intention can be discovered and is legal. And so after determining the intention of the parties the court, in order to carry it out, will sometimes give a word or a phrase a restricted rather than its strict legal meaning. This principle is well illustrated in the case of Winchell v. Winchell, 259 Ill. 471, 102 N. E. 823, 825. The bequest in that case is "to Fannie Standard to have and to hold during her lifetime and at her death to go to her heirs; but in case she shall die without issue, then the property above devised to her shall go to my other heirs, share and share alike." The court in construing this devise said: "The word 'heirs,' in its legal sense, means those persons whom the law appoints to take intestate estate, and unless the word is qualified by the context it has always been given that meaning. In ordi-

nary use, however, it is frequently given a different or limited meaning, and as the purpose of construing a will is to find the intention of the testator, whenever it is apparent from reading a will that the testator did not use the word in its strict legal meaning, it will be given such meaning as will carry out his intention. Gannon v. Peterson, 193 Ill. 372, 62 N. E. 210, 55 L. R. A. 701. The manifest intention of the testator expressed in this will was to give the fee after the life estate to the heirs of the body of the devisee, because the limitation over to other heirs was to take effect in default of issue, which means heirs of the body, unless there are explanatory words showing that the term was used in a restricted sense. He could not have intended to limit a remainder to the heirs general of the complainant and then take it from them in default of a particular class of heirs. His intention was to limit the remainder to the heirs of the body of the complainant, since it was only in default of such heirs that the remainder was to go to others." The court held that the estate devised was a fee tail, and by virtue of paragraph 6, chapter 30, Illinois Statutes, a life estate went to Fannie Standard, with the remainder in fee to the heirs of her body.

In the instant case the grant is, first, to Charles T. for and during his natural life; second, at his death to Sarah Louisa, Mary Eliza, and Charles; third, in case of the death of either of the said last-named three persons without issue, then to the survivors or survivor of said three, their heirs or assigns.

It will be noted that in the second grant the word "heirs" is not present, and this distinguishes that grant quite materially from the devise in the Winchell Case. If we consider the first and second grants without the third there can be no ambiguity about the parties' intention, for it is a simple grant of a life estate to the father, Charles T., with remainder in fee to his three children. It is insisted, however, by appellants that the word "heirs" in the third grant shall be construed to refer also to the grantees in the second grant, but for what reason we are unable to perceive, unless it be to make the grant more nearly like the Winchell Case. It is not suggested, however, that the word "assigns" in the third grant be construed to refer to the grantees in the second grant, yet it is as descriptive of the title which was intended to be conveyed by the third grant as is the word

"heirs." If both words are construed to refer to the grantees in the second grant, then we would have a much different situation from that presented in the Winchell Case, and in such case it would be most difficult to construe the parties' intention to be that of granting a fee tail by the second grant without doing violence to a part of the words used, for the word "assigns" implies a power to alienate property, which is not a characteristic of a fee tail.

■ We are in accord with the construction given in the Winchell Case, but we think it is not pertinent to the facts in this case. There a life estate was given to Fannie Standard with remainder to her heirs; here a fee simple is given to Sarah Louisa, Mary Eliza, and Charles, with no remainder whatever. In that case, by the death of Fannie Standard without issue, which means heirs of her body, the remainder which had been given to her heirs generally was taken from them, in default of a particular class, and given to the heirs of her body. The court said that the language of the two clauses was inconsistent, one with the other, and that from the context of the instrument it was not the intention of the parties that this should be, and thus it construed the word "heirs" to mean "heirs of the body," and thereby eliminated the inconsistency. In the instant case there is no inconsistency either of language or intention. The word "issue" is merely descriptive of the time of an event when the title is to determine. It does not take from any one the estate previously granted, but it only places a limitation upon the estate granted to Sarah Louisa, Mary Eliza, and Charles by the preceding clause. Upon the happening of an uncertain event, which was a death without issue, the fee which was vested by the second clause became divested and shifted to others. This, in terms, is what the books refer to as mounting a fee upon a fee.

It is contended by appellants, however, that under the law of Illinois, at the time this deed was made in 1862, a fee could not be mounted upon a fee, and, if this contention be correct, appellants must prevail, otherwise not.

■ The deed must be construed according to the law as it stood at the time the deed was made. Aetna Life Ins. Co. v. Hoppin (C. C. A.) 214 F. 928. It is provided in paragraph 1, c. 28, Cahill's R. S. Illinois (enacted in 1819): "That the common law of England, so far as the same is applicable and of a general nature, and all statutes or Acts of the British parliament made in aid of, and to supply the defects of the common law, * * * shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority."

It may be admitted that under the common law of England a fee cannot be mounted upon a fee by deed, and this principle had its foundation in the necessity of livery of seizin to the transfer of a fee. The fee first granted could be defeated only by the grantor taking advantage of the breach of some condition and making an entry, thus regaining the seizin in himself; otherwise he could not make a subsequent livery of seizin; and so, if a fee should be permitted to go over from the first tenant in fee, it would involve a transfer of the seizin without the required ceremony of actual livery. The feudal law recognized no ownership of land except seizin and possession by a tenant bound to the performance of feudal services. The courts of law did not recognize any trust or confidence to hold for the benefit of any other person. The only protection, in the beginning, of one for whose use another had been enfeoffed of land was the good faith of the feoffee to uses; but in the latter part of the fourteenth century appeals to chancery were recognized, and by the middle of the fifteenth century the jurisdiction of the chancellor to enforce the terms of a use against a feoffee who failed to observe them was fully established. While at common law, owing to the requirement of livery of seizin, a freehold could not be limited to commence in the future, this rule had no application to the declaring of uses, which did not require livery of seizin, and they could be created to spring up in the future or to shift from one person to another at a future time or on the happening of a future event, and thus a use might be created after a limitation in fee. In 1535 the statute of 27 Henry VIII, known as the Statute of Uses, was enacted, which delared that when any person should stand seized of any lands, to the use, confidence, or trust of any other person or persons, the persons having the use, confidence, or trust should be seized and deemed to be in full seizin and possession of such lands in such like estates as they had in the use, and that the title and possession of the persons so seized to uses should be deemed to be in the persons having the use, confidence, and trust. Substantially this same statute of uses was enacted by the Illinois Legislature in 1827, Cahill's R. S. Ill. 1929, c. 30, par. 3. Since uses were by the statute converted into legal es-

tates, they were afterwards recognized by the courts of law, and the rules were applied to them which had been developed by the court of chancery. Deeds of bargain and sale and covenants to stand seized were instruments by means of which, under the statute of uses, the ownership of land could be transferred without livery of seizin, and fee limited upon a fee by way of use. Harder v. Matthews, 309 Ill. 548, 141 N. E. 442, 446; Stoller v. Doyle, 257 Ill. 369, 100 N. E. 959. Although the common law of England does not recognize a fee limited upon a fee, and although Illinois adopted the common law, yet it did so in a restricted sense by adopting the acts of Parliament in aid thereof and to supply the defects of the common law, and in addition it enacted in 1827 the English Statute of Uses. The history of this legislation is fully set forth in Harder v. Matthews, supra, which decides that under the law of Illinois a fee can be limited, or mounted, upon a fee.

It is appellants' contention, however, that as this case was decided in 1923 it does not correctly express the law as it stood in 1862. Unquestionably the statute of uses of Illinois has authorized such a deed since 1827. If the higher courts of Illinois have not otherwise decided, then it must be held that such a deed was valid in 1862. The court, speaking in Harder v. Matthews, supra, says: "It has been stated frequently by this court that a fee cannot be limited after a fee by deed, but it has been decided in only one case. Palmer v. Cook, 159 Ill. 300, 42 N. E. 796, 50 Am. St. Rep. 165. * * * which has been overruled." Bauman v. Stoller, 235 Ill. 480, 85 N. E. 657. Speaking further the court says: "Except Palmer v. Cook, supra, * * * there has been no adjudication by this court that a fee can not be limited by deed upon a fee. Generally, the cases in which that dictum has occurred have been cases involving the construction of wills, in which the dictum was in no way necessary, the question was not involved and could not possibly have been decided."

The court then takes up each case relied upon by appellants herein, except the case of City of Peoria v. Darst, 101 Ill. 609, and shows that this question was not before those courts. In the case of City of Peoria v. Darst, supra, the court says that the title under discussion is not a fee limited upon a fee. The overruling of Palmer v. Cook, supra, limits the effect of that decision to that particular case, and of course it cannot be considered as expressing the law as it was in 1862. Appellants call our attention to Kuhn v. Fairmount Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed 228, in which it is held that where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property in that state, those rules are accepted by the federal court as authoritative declarations of the law of that state. There is no such condition in the instant case. It cannot be claimed with any degree of seriousness that the one decision of Palmer v. Cook, supra, which is now overruled and which was inconsistent with the Illinois statutes, is sufficient to authorize appellants to invoke the doctrine of stare decisis.

■ It cannot be denied that the deaths of Sarah Louisa, Mary Eliza, and Charles refer to a death before the death of Charles T. Harder v. Matthews, supra; Smith v. Dugger, 310 Ill. 624, 142 N. E. 243.

■ Appellants contend that the word "survivors" should be construed to mean "others." We find nothing in the plain language of the deed to convince us that the parties to the deed intended to use the word "survivors" in any other sense than that which is ordinarily given to it. Sarah Louisa having died, we think the deed is ineffective to convey any title to any part of the land which may be held by Charles at his death, because appellants' mother can never be a survivor of Charles. Wood v. Chase, 327 Ill. 91, 158 N. E. 470; Summers v. Smith, 127 Ill. 645, 21 N. E. 191; Duryea v. Duryea, 85 Ill. 41.

The cause was correctly decided by the District Court.

Decree affirmed.